### IN THE

# COURT OF APPEALS

### OF

# MARYLAND.

---

DECEMBER TERM, 1849.

JOHN HANSON THOMAS, *vs.* JOHN T. MASON, AND MARGARET
A., HIS WIFE, AND JOHN DOUB.

Lands were conveyed to trustees, in trust, to sell and pay the debts of the
grantors, according to legal priority. The proceeds were misapplied by the
trustees, and *D.*, a purchaser, whose land (for which he had paid the trus-
tees its full value,) was levied upon by judgment creditors having liens
prior in date to a judgment of *T.*, who had also purchased lands under
the same trust, but had retained the purchase money, and applied it, under
an agreement with the trustees, to his own junior judgment, filed a bill
against said *T.*, and other co-purchasers, praying for an account and con-
tribution, and that *T.* might be required to pay in his purchase money, to
be applied to the elder judgments, with a view to exonerate the land of
complainant. After the answer of *T.*, the complainant filed an amended
bill, charging that *T's* judgment, to which he had so applied his purchase
money, was founded in usury, and, therefore, void. Upon demurrer, on
the ground, among others, of multifariousness, it was HELD:

That the relief prayed in the original bill, being essentially and virtually
against the operation given to *T's* judgment, there is no inconsistency in
the amended bill, which questions the amount of that judgment—the whole
transaction being predicated upon one and the same judgment.

Multifariousness is the blending in one bill matters, in their nature, separate
and distinct. But not so, if there be two good causes of complaint grow-
ing out of the same transaction, where all the defendants are interested in

1    v.8

the same rights, and where the relief against each is of the same general character.

In this case, the different causes of complaint are not inconsistent or different in their nature and character. They all grow out of the same transaction, in which, in substance, but one question of right is involved, viz: the right of the complainant to be relieved from the preference and effect given to this alleged usurious judgment, by the agreement and acts of *T.* and the trustees.

The payment of trust money to *T.*, who, under the circumstances, was not entitled to it, whether the money of the complainant, or other purchasers, established such a relation between all of them, that if any one is called upon to pay again, there is such privity between him, and all the others, that he can seek in equity to have the money restored, and properly applied.

In equity, the money paid to *T.*, or the price of the land sold to him, becomes the fund of the party who is prejudiced by the misapplication, and his resort is not alone against the trustees, but he may follow the fund.

*T.* must be considered as a purchaser, independent of his judgment and agreement, and his purchase money ought to be paid to the trustees, and cannot be retained by him in satisfaction of his own judgments, unless the prior judgments against the grantors are satisfied.

No arrangement with the trustees could let in his judgments before their proper order.

In adjusting his claim, these judgments of *T.* are not conclusive, but open to inquiry. They could be impeached by subsequent judgment creditors, for fraud, collusion, payment, or usury, with a view to defeat them, and let in subsequent liens.

It is the right of every party, in equity, to question the title, or the legality of a claim that precedes his own, and, by a successful impeachment, to render it void, and defeat it.

If subsequent judgments have been paid with the complainant's money, he stands subrogated in the place of these subsequent creditors, is interested in knowing the extent and legality of all the preceding judgments, and, therefore, has such privity and interest as will entitle him to implead *T.* in respect of his judgment, and call on him for a discovery in relation thereto.

Where a party seeks to relieve himself, on the ground of usury, from the payment of the sum claimed on a contract, he must tender the amount actually due; but where the contract or judgment is already satisfied, and the party seeks to have the excess accounted for, and restored, the reason of the rule ceases.

A willingness to allow all that is actually and fairly due, is the equitable requirement, and as the complainant, in his bill, insists that *T's* judgment "*ought to stand only as a security for the sum actually due from the defendant in it,*" this, under the circumstances of this case, if not an actual tender, is fully equivalent to what the rule requires; it is an offer to do equity before he asks relief.

The case of *Jordan vs. Trumbo*, 6 *G. & J.*, 103. asserts the rule in all its breadth, but evidently applicable only where relief is sought against payment and compliance with an usurious contract.

*T.* has no claim to profit by the complainant's neglect. But for the agreement between him and the trustees, the lands and funds applied to his judgment would still be at the disposal of the trustees, for the relief of the complainant. That agreement cannot over-reach the trust, or the prior creditors to the prejudice of their judgments, and the complainant being, in every equitable point of view, (his lands being held liable for those judgments,) one of those creditors, has a just claim, in a court of equity, to the relief prayed.

APPEAL from the *Court of Chancery.*

The original bill in this case will be found set out in full in the case of *Doub vs. Barnes, et. al., 4 Gill,* 1, as well as the answers of other defendants. The answer of *Thomas,* the present appellant, is sufficiently stated in the opinion of this court on the present appeal, delivered by his honor, *Judge Frick.* The character of this answer, or other circumstances, induced the complainant to file an amended bill, the averments of which are, also, fully stated in said opinion. To this amended bill the appellant demurred, but the chancellor, (JOHNSON,) on the 9th of December, 1847, overruled the demurrer, and ordered the defendant to answer, and, at the same time, dissolved the injunction before granted, restraining execution of the judgments assigned to *Mrs. Mason,* directed an account to be taken for the purpose of ascertaining the sums to be contributed by the several purchasers from the trustees, towards payment of the judgments mentioned, and also an account against *Price,* the surviving trustee, and reserved the equities between the complainant and the defendant, *J. H. Thomas,* growing out of either the original or amended bill.

From this decree the defendant, *Thomas,* appealed.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN and FRICK, J.

By WILLIAM SCHLEY, for the appellant, and
By THOS. S. ALEXANDER, for the appellee.

FRICK, J., delivered the opinion of this court.

*John Hanson Thomas* was made a defendant to the complainant's original bill in this cause, as a purchaser of parcel of the lands from the trustees, long after the complainant had purchased. It is alleged that no part of the purchase money, agreed to be paid by him, has been paid to the trustees, but was reserved in his hands, under an impression entertained both by the trustees and himself, that the trust fund, exclusive of these purchases made by him, would be adequate to the discharge of all the judgments of older date and lien than the judgment recovered by *Thomas* against the grantors, in 1839; and, consequently, that the money in the hands of *Thomas* would be properly applicable to the payment of the incumbrance held by him.

The bill, however, affirms that this impression is not sustained by the result, but that the judgments of *Mrs. Mason*, on which the executions have been issued, are prior in date and lien to the judgment recovered by *Thomas;* and that, therefore, *Thomas* should be required to pay in the purchase money due from him for the benefit of these prior judgments, before the complainant is called upon, a second time, to pay for the land which he had purchased, and already paid for.

The answer of *Thomas* admits, that at the date of the deed of trust, he held three judgments against the grantors, on the first of which he received a payment, and then assigned it to *Dodge* On the second, he received part in money, and purchased from the trustees a part of the trust estate originally belonging to *Barnes*, on the express condition that the purchase money was to be credited on said judgment. On the third judgment he received payments in money, $2,800 on the 9th of January, 1840, and $5,000 on the 17th of April, 1840 ; and, under a written agreement between him and the trustees, on the 23rd of February, 1844, he received from them, by conveyance, parcels of the trust estate valued at $2,312.50, the note or obligation of *Doub*, the complainant, to the trustees, for the further sum of $967.50, given to secure the payment

of the purchase of part of the trust estate sold to *Doub*, and the individual notes of the trustees, for the sum of $2,136.42.

This agreement further stipulates, "that *Thomas* is not to pay for said land, otherwise than by crediting its value on said judgment, and that such credit is not to be absolute, unless the title which the said *Thomas* shall acquire, under the conveyance from the trustees, shall be good, and unincumbered, and indefeasible; that the trustees are to extinguish all prior liens on the lands to be conveyed as aforesaid, and that *Thomas* is to hold said lands, the note or obligation of *Doub*, and to be entitled to require payment of the notes to be given him by the trustees, even if it should thereafter appear, that the assets in the hands of the trustees, would not avail to pay so much on the said judgment."

After this answer of *Thomas*, the complainant filed his amended bill, in which he charges that the judgment of the 9th of January, 1839, was founded upon a corrupt and usurious agreement between said *Thomas* and *Barnes*, the particulars of which are set forth and charged in the said amended bill; claiming that, by reason of said usury, the judgment was absolutely void, or, at least, ought to stand only as a security for payment of the sum actually received by *Barnes*, upon the transaction between them, and then prays a discovery as to the agreement, and such relief as his case may require.

To this amended bill, *Thomas* has demurred, and the demurrer being, by the chancellor, overruled, that decision is now before us for review. The grounds insisted upon in support of the demurrer are:

1st. That by the amendment, the bill, as amended, has been rendered multifarious.

2nd. That complainant has no interest, right or title to implead this appellant, touching the matter of said amended bill.

3rd. That the complainant (conceding that he has any interest or right to implead this defendant, touching the consideration of said judgment,) ought to have tendered his willingness to pay the amount actually due.

4th. That in the averments, scope and object of his bill as

amended, there is no equity shewn, entitling the complainant to the discovery or the relief prayed, or to any discovery or relief touching the matter of said amendment.

The first objection is, that *Doub,* by his amended bill, has departed from the design of his original complaint, and blended with it other matters out of the scope of, and inconsistent with it; and it is thus charged to be multifarious, because, in the original, he is charged as a *purchaser* of the lands, and called upon to pay in the purchase money, to be applied to elder judgments, when, by the amended bill, the complainant arraigns him as a *creditor,* and seeks to be relieved against the judgment as obtained in execution of an usurious agreement. It will be remembered, that the bill seeks for an account, and the proper application of the funds of the trust, to the discharge of the judgments, according to their just priorities, alleging that *Thomas* is both a judgment creditor of the grantors, and a purchaser of land from the trustees, the purchase money for which, still remains in his hands, under the assertion that (by the agreement with the trustees,) it is properly applicable to the payment of his judgment. The complainant, on the part of judgment creditors, prior in date to the judgment of *Thomas,* is called upon to pay, a second time, for the lands purchased by him, and insists upon his equity in requiring *Thomas* to pay in the amount of his purchase money, in the first instance, for the benefit of these prior creditors. And further, in his amended bill, he impeaches the validity of this judgment of *Thomas,* on the ground of usury, and claims that, if not void, it should stand only as a security for the sum actually advanced by *Thomas* to *Barnes.* That is to say: that in the account with *Thomas* and the trustees, in the credits to be allowed upon his judgment, in the proper administration of this trust, he is first to be postponed to the elder judgments, and then is not to be let in upon a basis more comprehensive than the amount actually paid by him. There is, then, no inconsistency here, the whole transaction being predicated upon one and the same judgment: and when the purchase money is claimed to be set off by *Thomas,* as a credit against this judg-

ment, it is the right of *Doub*, who is exclusively affected by it, to enquire into the validity and consideration of the judgment, and the relation in which it stands to the other judgments sought to be enforced against him. If, as claimed in the original bill, *Thomas* was required to pay in his purchase money, *Doub* would be relieved to that extent, from the judgment of *Thomas* operating upon the fund, unless, in its order, postponed to *Mrs. Mason's*; and there the scope and object of the bill against *Thomas*, is to obtain relief against the effect which the trustees and *Thomas* have agreed to give to his judgment, by a compromise, which makes it available in advance of the others, and upon a condition that violates the trust deed, unless the prior judgments can be first liquidated from the trust funds. But, for this judgment, *Thomas*, as the agreement shows, would not have purchased land; or, if an unconditional purchaser, must have paid the purchase money, against which he now sets off his judgment. The relief, then, prayed in the bill, is essentially and virtually against the operation given to this judgment; and there is, therefore, no inconsistency in the amended bill, which questions the amount of the judgment, and seeks to reduce it to its proper standard and value in a court of equity, for, besides the value of the land which he purchased, and for which he credits the trust fund upon his judgment, (and which it is the object of the bill to bring in money into the hands of the trustees,) it is alleged, that if the *actual* debt due to him be discovered, it will result that he has received more than his actual principal and interest, even without regard to the other question, upon the priority of liens.

Multifariousness is said to be "the blending in one bill matters which are, in their nature, separate and distinct." *Story's Eq. Pl.*, 224. "Different subjects, which may embarrass the defendant in his proper defence against each, and may require different proceedings or decrees on the part of the court." *Same*, 231. "But not so, if there are two good causes of complaint growing out of the same transaction, when all the defendants are interested in the same rights, and where the relief

against each is of the same general character." *Same*, 233, –'34, *(note* 1,*)* and 5 *Paige R.*, 160.

The complainant's bill is precisely of this character. He, with defendants, was a co-purchaser of lands under this deed of trust. By reason of the alleged misapplication of his purchase money, the judgments against his lands, so purchased, remain open. To relieve himself, he avers the consent of the judgment creditors to the deed, and the proceedings of the trustees under it, and (failing in this,) he questions the amount and validity of these judgments, calls upon the purchasers to pay in their purchase money, before he is called upon to pay again, and claims from the other purchasers under the trust, contribution in aid and relief of those judgments still binding on his purchase. " The inquiry is not, whether each defendant is connected with every branch of the cause, but, whether the plaintiff seeks relief in respect of matters which are, in their nature, separate and distinct." *Daniel's Ch. Pr.*, 439, 449, and *Attorney General vs. Goldsmith & Co.*, 5 *Sim.*, 670–'75.

But, it is said that there is an obvious distinction here, where the party seeks not only to be relieved from the excess of usury, but the just debt; the principal and interest received by *Thomas* is invoked (by contribution,) in aid and relief of the complainant, thus cutting off the excess of his judgment, and claiming, besides, an abatement from the true amount which the rule of equity awards him. Conceding that *Doub* may properly implead the defendant, in relation to the objects of his bill, it is not perceived that any violence is here done to the rule, and to the just principles which must always control a court of equity.

If it is first established, that the judgment cannot avail *Thomas* for more than the amount actually due to him over the usurious excess; why should that judgment, thus adjusted, stand afterwards in relation to the liens in a better and preferred condition to elder judgments? Not because it has been paid by the trustees, for the payment was improperly made. It is the very ground upon which it is impeached, and the burden of complainant's bill is, that nothing should have been paid; neither the usurious interest, nor the actual amount advanced, in

preference to the elder judgments which he is now called upon to satisfy. And thus two distinct equities are raised: 1st, that the excess of usury, to which defendant has no right, shall go to reduce these elder judgments, and 2nd, that the amount which he received from the trustees, over and above what his judgments would be entitled to, in their order of priority, should be brought in to lessen *Doub's* contribution. This is the relief asked by the complainant, and presents to the consideration of the court the two subjects in a view entirely compatible with each other.

The whole matter of complainant's bill is, therefore, entirely homogeneous. The different causes of complaint are not inconsistent or different in their nature and character. They all grow out of the same transaction, in which, in substance, but one question of right is involved, as regards the defendant, *Thomas;* the right of the complainant to be relieved from the preference and effect given to this alleged usurious judgment by the agreement and the acts of *Thomas* and the trustees. In this view, the objection of multifariousness is not sustained.

2. And is there no right here, on the part of complainant, to implead this defendant? no privity of right and obligation between them? As the purchaser of *J. T. Mason's* land, *Doub's* purchase money ought to have been applied to the judgments against *Mason*. It was the duty of the trustees so to apply it. Such application would have relieved the land from the judgments which *Mrs. Mason* (as assignee of them,) now seeks to enforce; and, in any event, would have left *Thomas'* judgment unsatisfied. The payment of the trust money to *Thomas,* who was, under the circumstances, not entitled to it, whether the money of *Doub,* or of other purchasers, established such a relation between all of them, that if any one of them is called upon to pay again, there is such privity between him and all the others, that he can seek in a court of chancery to have the money restored, and properly applied. In equity, the money paid to *Thomas,* or the price of the land sold to him, becomes the fund of the party who is prejudiced by the mis-

2    v. 8

application, and his resort is not alone against the trustees in this case, but he may follow the fund.

*Thomas*, as a purchaser of the lands, must be considered as such, independant of his judgment and agreement.    The purchase money ought to be paid to the trustees, as part of the general fund, for the purposes of the trust, and cannot be retained by him in satisfaction of his judgment, unless the prior judgments against the grantors are satisfied.    For the elder judgments, unsatisfied, may be levied upon this land, even if paid for by *Thomas* to the trustees, and he would lose the money paid.

If, on the contrary, the elder judgments are satisfied, there would be just pretext for withholding the purchase money, as the trustees would only pay it back to him, in discharge of his judgment under the terms of the deed, or in his order of priority in law, which the terms of the deed could not affect.    Lest the elder judgments might remain a charge upon the land bought by him, the purchase money has been withheld; and if the proceeds of the sale of all the lands, left nothing to be applied to his judgment, but, on the contrary, showed a *deficit*, he must be called upon to pay, or the lands bought by him are liable to be sold for the deficiency.    No arrangement with the trustees could let him in before his judgments attached in their proper order.    He is, therefore, a naked, unconditional purchaser, without the shadow of right or pretext to set off his judgment of 1839, against the claim of the trust to the purchase money, and is to be treated as such in the further administration of the trust.

Assuming that the prior incumbrances had all been satisfied, the proper period would then arrive for the liquidation of his judgment, out of the amount of his purchase money.    In adjusting his claim, are these judgments conclusive or open to inquiry?  Suppose there be subsequent judgment creditors likely to be excluded from the fund, may they not challenge the legality of these judgments, or the amount claimed under them? may they not be impeached on the ground of fraud, collusion, payment, or usury, with a view to defeat them, and let

in the subsequent liens? And is there no such privity between the several parties to these judgments, as to warrant such inquiry? It is the constant practice to permit a subsequent mortgagee to question the title and claim of a prior incumbrancer, and to take advantage of the legal defect or taint of the elder incumbrance. It is the right of every party in equity to question the title or the legality of a claim that precedes his own, and, by a successful impeachment, to render it void, and defeat it.

And what is *Doub's* position here? Is he less a privy here, than if he were a judgment creditor postponed to *Thomas?* He is called upon to to pay the judgments of *Mrs. Mason,* which are prior in lien to the judgment of *Thomas,* here in question. He has already paid the full value of his lands, but by the former decision of this court, he cannot extricate them from the grasp of these liens. The land purchased by *Thomas,* and not paid for, is equally liable in equity to the payment of these judgments; and *Doub's* purchase may be further liable to contribute to the liquidation of succeeding judgments, in their order, until he has paid for his purchase over again. If, then, subsequent judgments have already been paid, and with *Doub's* money, (as necessarily they must be,) does he not stand subrogated in the place of these subsequent creditors, (as if they were parties called to refund,) and is he not interested in knowing the character, the extent and legality of all the preceding judgments? That of *Thamas* is alleged to be tainted with usury; and if it can be successfully impeached, who is more concerned than *Doub* in defeating it, that he may, thereby, lessen the amount of his contribution? Has he not, then, such privity and interest here, as to entitle him to call on *Thomas* for a discovery, and is not the discovery material to the relief sought by the bill? We are of opinion that, on these grounds, he is properly in court.

3. Still it is argued that, conceding this right, *Doub* is yet bound, by the rules of equity, to pay or tender the amount admitted to have actually passed in the transaction between *Barnes* and *Thomas,* before he can maintain his bill. The

rule is undeniably so, where the party seeks to relieve himself from the payment of the sum claimed upon the contract. But, when the contract or the judgment is already satisfied, and the party seeks to have the excess accounted for, and restored, the reason of the rule ceases. The defendant, here, has already received all and more than he is entitled to, as the complainant alleges. The tender contemplated under the rule, is not mere form, and to suppose it necessary to pay, or at least to tender payment of an amount over again, where the allegation is, that the defendant received more than his due, would be a wide departure from the paths of equity. A willingness to allow all that is actually and fairly due, is the equitable requirement, and this the complainant has expressly reserved to the defendant in his bill. He asks for a discovery of what was actually paid by *Thomas* to *Barnes,* and insists that the judgment is void, by reason of the usury, and that, "at least, it ought to stand only as a security for the sum actually realised by *Barnes*" from the transactions between them. And is not this, under the circumstances of this case, if not an actual tender, equivalent fully to what the rule requires, an offer do do equity before he asks relief? If he is to pay down the actual principal and interest of this debt; that is, in fact, to pay the debt over again, before he can even ask relief, the doors of chancery are closed upon him. It is a denial of all relief. The case of *Jordan* and *Trumbo,* 6 *G. & J.,* 103, it is true, asserts the rule in all its breadth, but evidently applicable only where relief is sought against payment and compliance with an usurious contract. For it is said, "after payment of the claim, he may pray to be relieved as to the amount paid beyond what was legally due and recoverable;" of course not assuming that he shall tender to pay again what he has already paid, and seeks to recover back again, by his bill. The cases cited from *Paige,* do not contravene this position. In *Judd vs. Seaver,* 8 *Paige,* 548, the bill was for relief against an usurious contract. There was no offer to pay anything. By the court, "there are cases that decree, sometimes, payment of the amount equitably due; but it is where the offer is to pay whatever should be found to be

due, and *waiving a forfeiture* as to everything except the usurious premium." And in 3 *Paige*, 531, it is said, complainant cannot call on defendant for discovery of the usury charged, unless he pays, or offers to pay the amount equitably due, for the *reason*, "that he is not bound to make a disclosure that might subject him to forfeiture, or loss of the whole, or any part of the money actually lent." Therefore, where the complainant submits *to allow* what was actually due, the reason for the rule is gratified. It is no more than the standing maxim exemplified, that he that will have equity, must do equity.

4. Upon the last point of objection here taken, we have before intimated that complainant, in his bill as amended, has shewn himself entitled to the discovery and the relief prayed. The bill charges him as the purchaser of lands, under the same trust under which the complainant purchased, and that he has paid no part of his purchase money. His answers sets up the agreement with the trustees, by which the amount of his purchase was to be credited upon the judgment in question. The amended bill charges that this judgment was obtained upon an usurious agreement, and prays for discovery. When *Thomas* purchased of the trustees, he knew of the existence of this deed of trust, and the agreement shows that he treated with *Price* and *Yost* as trustees, and has thus assented to the terms of the deed. He stipulated with them to make the sale only conditional, unless the title under their conveyance should prove unincumbered. He takes the lands under a judgment, which could not legally be paid until every dollar of *Mrs. Mason's* assigned judgments should be paid. *Doub* is now called upon to pay these judgments from the misapplication by the trustees of his purchase money; and defendant, who has paid nothing, wrests from him the only remnant of property from which he could be secured. He receives from the trustees *Doub's* bond for the lands purchased by him, which ought have been applied to extinguish prior liens, and by the receipt of moneys, countenances a clear perversion of the trust, and prevents the proper application of the fund. His agreement with the trustees, to extinguish prior liens, shews that he knew such existed,

and the only liens then outstanding, were *Mason's*, and *Lynch & Craft's*. When he received from the trustees the sum of $7,800, he must have known, from this stipulation, that he was taking it to the exclusion of elder judgments, and by assenting to the deed, as he did, why should not the parties aggrieved by this misapplication, have redress against him? The trustees could not bargain him into a position more advantageous than his judgment, or the deed gave him; and it is not, as is contended, a question only between the creditors and the trustees, or between the purchasers and the trustees, or between himself, as a purchaser, and the trustees. By the perversion of the trust, complainant has been injured, and his purchase put in jeopardy, by the wrongful act of the defendant and the trustees. His privity with all the parties, is established by his purchase with defendant from the same trustees, and his right and duty to look to the proper application of the trust fund, of which defendant still retains a portion in his hands, as the bill alleges. It is nothing to the purpose to say, that *Doub* has forfeited his standing in a court of equity, by his own negligence; that he had warning of the misapplication of his money, and yet continued to rely upon the trustees. Authorities have been cited to show, that coming into a court of chancery, he must show a case free from any laches on his part, and that such laches existing, must rule him out of court. To the full extent, this principle has been applied to him in the case of *Lynch & Craft*, and the preceding cases. He has paid the full amount of his purchase money, and more, and has received no title yet. He has suffered the penalty of his neglect to look to the application of his moneys, to the judgments by which the lands were bound. But how can this avail the defendant here? If *Doub's* money had been altogether applied to the judgments on *Mason's* lands, other judgments, prior to *Thomas'*, would still bind the land which *Thomas* claims to have purchased, in extinguishment of his judgment. This seems to have been in the view of *Thomas*, by the arrangement he entered into, that the trustees " were to extinguish all prior liens on the lands to be conveyed to him." It was no

sale, unless the purchase money could be credited in value on the judgment. Upon what equity can such an agreement be supported to the prejudice of other creditors, whose rights, under the deed, and in priority of law, are superior to his? The trustees may have assumed that the prospective state of the fund would have justified this arrangement; but the assumption is now asserted to be groundless. The complainant's lands are now under execution, to pay these elder liens, which he has once before paid to these trustees. By a misapplication of the funds, they have anticipated the payment of *Thomas'* junior judgment; whether out of complainant's identical money, or not, is immaterial. It was, at all events, a fund that should have been applied to these elder judgments, and no agreement between *Thomas* and the trustees can be permitted to divert it, particularly when it compels complainant to pay a second time for his purchase, while *Thomas*, (upon the hypothesis that the trust fund is exhausted,) upon the judgments preceding him, pays not one cent for the land conveyed to him by the trustees.

*Thomas* can, therefore, have no claim to profit by the complainant's neglect. But for the agreement between him and the trustees, the lands and funds applied to his judgment would still be at the disposal of the trustees, for the relief of *Doub*. That agreement cannot, in any form, be permitted to overreach the trust, or the prior creditors, to the prejudice of their judgments. *Doub*, in every equitable point of view, his lands being held liable for those judgments, is one of those creditors, and has a just claim, in a court of equity, to the relief prayed. The chancellor's order overruling the demurrer, is therefore affirmed.

ORDER AFFIRMED.