## NATHANIEL WILLIAMS *vs.* MARIA L. WEST and HENRY COURTNEY, Adms. of JAMES WEST.

W, in 1805, executed a deed conveying certain real and personal property to trustees in trust, to sell and pay:—1st, the necessary costs, charges and expenses attending the execution of the trust; 2nd, certain scheduled debts; 3rd, the debts of all the other creditors of the grantor who should within eighteen months sign the deed. This deed contained a power of attorney to the trustees, with authority to appoint one or more attorneys under them. In pursuance of this authority, the trustees appointed W, the grantor in the deed, their attorney, with power to sell the property and apply the proceeds in execution of the trust. Under this power W acted until his death, in 1809, performing various duties in execution of the trust, and advanced to the preferred creditors, for the benefit of the trust, $2898, over and above his receipts as agent of the trustees, who recognised this advance and paid it in part. After W's death, there was awarded to his estate by arbitrators, with the consent of the trustees, $7000, for his services as such agent and attorney. After this the trustees appointed the appellant agent, with the same power formerly conferred on W. As such agent, the appellant adopted, acted upon, ratified and acknowledged the claims due W's estate as preference claims, to be paid out of the trust fund. He also took possession of all the books of accounts, vouchers, receipts, deeds, &c., both of W and the trustees, relating to the trust, and proceeded to act in execution thereof, and, as such agent, assumed and in fact paid part of the said claims due W's estate. Upon demurrer to a bill charging the above facts, filed by the administrators of W against the appellant, to recover the balance due on these claims: HELD, that these facts establish sufficient *privity* between the parties, to give the complainants the right to implead the appellant in respect to his acts as agent of the trustees.

Privity cannot be more clearly shown, than by the assertion of a claim on one side and an acknowledgment of it on the other.

The facts that the appellant took possession of the books, vouchers and documents of W, and that he has not settled any account with W's administrators, clearly entitle the latter to a discovery of the true condition of the fund, and the state of the accounts between them as representatives of W and the appellant as agent.

The appellant, from the time of his appointment, had the *exclusive* control of the trust fund, with all the evidences of the title and of debts due the trust estate, and the representatives of the original trustees, (they having died,) never intermeddled with the trust, and the appellant never accounted with them. HELD :

That these facts constituted the appellant a trustee, holding the estate for the benefit of the *cestui que trusts*, and as such, accountable to them for the

proper administration of the trust; and that the representatives of the trustees are not necessary parties to this suit.

The deed having authorised the trustee to appoint an agent, and to pay all the proper expenses and costs attending the execution of the trust, and the trustees having recognised the advances made by W and his claims for services, and devolved upon the appellant the obligation to pay them out of the trust estate, and the appellant having assumed so to do, and having in fact partly paid them, a demurrer cannot be sustained on the ground, that these claims are not payable out of the trust estate, or that W's administrators are not the proper parties to receive payment.

Where there is a full, adequate and complete remedy at law, equity will not interfere to grant relief, but matters of account and the discovery of vouchers, for the purpose of stating the account, and of ascertaining whether trust funds in the hands of a trustee are properly applicable to the payment of complainant's claim, are obviously within the jurisdiction of a court of equity.

The bill having charged that the complainants are ignorant whether any preferred creditors under the deed remain unpaid, and praying for a discovery, with a view that they may be made parties if necessary, a demurrer, on the ground that such creditors are not parties to the bill, cannot be sustained; they may be made parties at any time before final decree.

Upon the death of the original trustee in the deed, the appellant was, by a decree of Baltimore county court, appointed trustee for the closing of the trust, according to the terms and the conditions of the deed, and the bill seeks an account, both of his acts as such trustee and as agent as aforesaid. HELD, that the bill is not for this reason multifarious.

A complainant cannot join in the same bill claims of an entirely different character, and growing out of transactions in which the party charged acted in dissimilar capacities.

A party cannot unite in the same bill a claim against a defendant as a private citizen, with one arising out of his contracts as a public officer.

The reason of the rule is, that the defendant shall not be compelled to complicate his defence, by combining matters which have no necessary connection with each other.

But in this case the appellant, from his first connection with the trust, has occupied but the one capacity of a fiduciary. He had whilst agent the same power he has had since he became a trustee, and the moment he became trustee under the decree of the court, the funds which he previously held as agent, became, by operation of law, assets in his hands, for which he was liable to account as trustee.

Though this suit might have been engrafted upon the proceedings in the county court, appointing the appellant trustee, yet the complainants have the right to seek relief by original bill.

The decree of the county court simply substituted the appellant for the origi-

Williams *vs.* West's Adms.

nal trustees, and like them he could be held to an accountability on an original bill filed for that purpose.

That decree fulfilled its intended office, when it invested the appellant with the powers which had been possessed by the original trustees.

An objection of this kind should have been urged in the county court before the removal of the cause to the court of chancery.

APPEAL from the court of chancery.

This appeal is taken by the appellant, the defendant below, from an order of the chancellor overruling a demurrer to an amended and supplemental bill, filed by the appellees. The original bill was filed in the equity side of Baltimore county court, and then removed to the court of chancery. This bill the defendant answered, and exceptions were filed thereto by the complainants. The defendant also excepted to the sufficiency of the bill. The opinion of the chancellor (Johnson) upon these exceptions, is reported in *1st Md. Ch. Decisions*, 358. The complainants then, under leave, filed an amended and supplemental bill.

This bill, in substance, states, that James West, the intestate of the complainants, by deed, dated 21st of November 1805, conveyed to Humphrey Pierce and Alexander McDonald, certain real and personal property, and debts due West, in trust:—1st. To pay costs and expenses attending the execution of the trust. 2nd. To pay certain debts due by West, mentioned in a schedule annexed to the deed; and 3rd. To pay all other creditors of West who should sign and seal said deed within eighteen months from date. That said Pierce and McDonald were by the deed appointed attorneys of West, with full authority to do such acts as might be necessary to carry into execution the trusts of the deed, and with full power to appoint an attorney or attorneys under them, for the purpose aforesaid, and such appointment to revoke at pleasure. That said trustees entered upon the execution of the trusts of the deed, and appointed said West their attorney, to sell and dispose of the property conveyed, and debts assigned as aforesaid, and apply the proceeds in execution of said trust. That West, in virtue of his said appointment as attorney, per-

formed various duties in the sale of property and collection of debts, from the date of his appointment in 1805, until his death, in the latter part of 1809, and during that time had advanced, to or for the preferred creditors, or to or for the use and benefit of the trust, or for account of the trustees, the sum of $2898.48, over and above his receipts as agent and attorney of the trustees. That said advances were frequently recognised and confirmed by the trustees as properly made for account of said trust, and have been but partially repaid. That after the death of West, there was awarded to his estate, with the consent of the trustees, by arbitrators, to whom the claim had been referred, the further sum of $7000 as a compensation for the services of said West, rendered by him to the trustees as aforesaid, which made an aggregate of $9898.48 due the estate of West from the said trust fund; and that this claim being for necessary costs and expenses attending the execution of the trust, and to that extent relieving the trust from the burthens of the first class of preferred creditors, was a proper charge against any residue applicable under said deed to the payment of said first class of creditors.

That after the death of West, on the 25th of February 1810, the trustees appointed Nathaniel Williams, the defendant, the agent and attorney of the trustees, and by letter of attorney, under seal, conferred on him the same power which they had originally conferred on West. That Williams, as said agent afterwards adopted, acted upon, ratified or acknowledged the said claims of the complainants, as administrators of said West, and from the time of his appointment to the present time, had knowledge and notice of the existence of said claim, and that it was a proper charge against said trust estate, payable thereout even before the first class of creditors as aforesaid. That said Williams, as such agent, took possession of all the books of accounts, vouchers, documents, receipts and evidences of debt, muniments of title, deeds, &c., as well of said West as of the said trustees, touching said trust, and undertook and managed the sales, collection and receipts of the trust, and its funds, and also the payment of its charges,

debts and creditors. That he was fully aware of its state and condition, and of the order in which its charges and debts should be paid, and of the recognition of the claim of the said West by the said trustees, and that the said trustees had left it to, and as his duty, to pay off the said charges and debts in their just and equitable order; that it was so expected by them, and assumed and undertaken by the said Williams; and that said Williams did, from time to time, between the years 1810 and 1832, pay to the complainants various sums of money, but much short of their just demands. That the said Williams continued to act as general agent of the trustees, until the death of the said Pierce and of the said McDonald, upon whose death the said Williams was, by order or decree of Baltimore county court, passed on the petition of Luke Tiernan and others, on the 21st September 1836, appointed trustee for the closing and settling up of the aforesaid trust estate, according to the terms and conditions of the said deed. That said decree, in legal effect, only appointed the said Williams as trustee in the place of the surviving trustee, McDonald, and that said Williams entered upon the duties of said trust, made large sales of property and collected various debts, the amounts of which are unknown to the complainants. That a large portion of their debt being unpaid, the complainants frequently applied to the said Williams, while he was acting as agent for the said trustees, while he was clothed with general authority to pay them, while the said trustees expected and intended he should pay them, and while he was in receipt of large sums of money from the trust, to pay them their claims aforesaid. But that said Williams gave out or pretended that the said claims did not bear interest, and contented himself with paying them from time to time on account, various sums of money, long after their principal debt had accrued, while, at the same time, or during the same period, the said Williams was paying himself, as agent for the same trust, his commissions and expenses as they accrued. That during all the time the said Williams acted as agent of the trustees, and received and disbursed large

sums of money for the trustees, he never settled nor stated any account of his agency with them, or of or concerning the same; nor has he settled any account of his trust since the year 1836. And these complainants are therefore now ignorant whether the said Williams has or not properly applied the money received by him as agent, as aforesaid, or while he acted as trustee. That neither the executors or representatives of the original trustees ever intermeddled with the trust, and that said Williams never accounted with them. That at all times, from the time of his appointment as agent to the present time, the said Williams has had the actual care and custody of the proper funds and moneys of the trust; but whether he kept them separate from his own money or not, the complainants do not know. And they ask that the said Williams may discover how and where he kept the said money and funds? and whether he ever used and employed any part thereof, and if any, what part, in his own affairs, and for what time such uses continued in each and every case? That none of the second class of creditors mentioned in said deed ever signed the said deed or executed the release contemplated in it for their benefit, and the complainants are ignorant whether any of the creditors of the first class remain unpaid, and pray that said Williams may discover which of them, if any, are now unpaid, to the end that, if necessary, they may be made parties hereto.

The prayer of the bill is, that the said Williams may account of and concerning the affairs of his agency, and show what sums of money, when and how he received the same; and what sums of money, when, where, how and to whom, (discriminating between principal and interest,) he paid the same away. That he may in due time produce all his vouchers and receipts for each and every payment, and which the complainants charge he now has in possession. And that he may also produce the award in favor of the complainants, made between them and the original trustees. And that he may account of and concerning the matters of the said trust, and make the discovery sought for in relation thereto, to the end

that both said accounts may be taken, for the purpose of as-
certaining whether he has not trust funds justly and properly
applicable to the payment of the balance due the complain-
ants; and whether he is not chargeable therefor; and that
their aforesaid claims may be examined, ascertained and set-
tled, and upon their ascertainment the said Williams may be
decreed to pay the same, and for general relief.

With the bill was filed a copy of the decree of Baltimore
county court, as a court of equity, appointing the defendant,
Williams, "trustee for the settling and closing up of the afore-
said trust estate of the late James West, according to the
terms and conditions of the said deed of trust." It requires
the trustee, before he shall act, to give bond "for the faithful
performance of his duty as such trustee," but does not re-
quire him to account with or to act under the direction of the
court.

To this bill, Williams, who was the only defendant, demur-
red, and assigned seventeen causes of demurrer.

As to so much as relates to the agency, he demurs, be-
cause:

1. No title in complainants to the discovery or relief sought
in this behalf.

2. No privity between complainants and defendants, as re-
spects his acts as agent.

3. No case made for discovery or relief, touching said
agency.

4. That the personal representatives of the surviving trus-
tee, McDonald, are necessary parties.

5. That the personal representatives of Pierce, are neces-
sary parties, as to so much of the time of said agency as oc-
curred in his lifetime.

6. Remedy at law, against Pierce and McDonald, during
their joint lives, against McDonald, after the death of Pierce,
and against the personal representatives of McDonald, after
his decease.

As to so much of the bill as seeks discovery from appellant,
as trustee, he demurs, because:

7. No privity between complainants, as administrators of James West, and appellant as trustee.

8. Claims not proper to be paid out of trust estate.

9. Trust creditors necessary parties.

10. Baltimore county court as a court of equity, had jurisdiction over appellant as trustee.

As to the whole of the amended and supplemental bill, he demurs, because:

11. Bill is multifarious, in suing appellant as trustee and as agent.

12. Complainants are not, nor was West a creditor, under the trusts of the deed of trust.

13. Complainants' demands are legal demands.

14. Complainants' demands are entirely and exclusively demands against the estates of Pierce and McDonald.

15. The representatives of Pierce material parties.

16. The representatives of McDonald material parties.

17. The *cestui que trusts* under the deed are material and necessary parties.

The Chancellor, (Johnson,) overruled these demurrers, and delivered the following opinion accompanying his order.

"To the amended bill which was filed in this case, on the 9th of May, 1849, the defendant has demurred upon various grounds, and the cause coming on to be heard upon the demurrer, the solicitors of the parties have been heard, and the proceedings read and considered. The first three grounds of demurrer controvert the complainants' right to implead the defendant, in respect of his conduct as agent of the first trustees, and proceed upon the principle, that there is no such privity between him and the intestate of the complainants as can render him responsible to them.

"It appears by the bill, that upon the death of James West, the original trustees, Pierce and McDonald, in February 1810, appointed the defendant, Williams, their agent and attorney, and conferred upon him, by an authority under their hands and seals, the same powers which they had before confided to said West; and that the defendant, as such agent, adopted and acknowledged the claims asserted by the complainants as due

to the estate of West; and that those claims were a proper charge against the trust estate, and payable out of the assets thereof before the creditors of the first class mentioned in the deed.    That the defendant took possession of the trust estate, and all papers and documents relating thereto, including those which were connected with the transactions of West as the former agent of the trustees; and that acting upon such adoption and acknowledgment of the claims of the complainants upon the trust estate, he, the defendant, had, from time to time, from the year 1810 to the year 1832, paid the complainant various sums of money on account of, and in part discharge of their said claims.    The bill further alleges, that upon the death of the original trustees, the defendant, in September 1836, was, by a decree of Baltimore county court, appointed trustee for the purpose of settling up and closing the trust estate, according to the terms of the deed, which appointment was accepted by him, and bond given as required by the decree.

"It thus appears, from the allegations of the bill, that the defendant not only recognized and admitted the complainants' title to be paid out of the trust estate in his hands and his obligation to pay them, but that in point of fact, he did pay them several sums in part satisfaction of their claim.    The debt then is admitted, the responsibility of the funds in the defendant's hands is admitted, and his obligation so to apply them is also admitted, for the demurrer admits the truth of every fact stated in the bill which is revelant and well pleaded.    *Story's Eq. Pl., section* 452.    It appears that this state of facts does establish such a privity between the complainants and the defendant as authorises them to implead and call upon him to account in this court.    The claim of the complainants was not against the original trustees *in personam,* but against the trust estate, and consequently, when the trust devolved upon the defendant, a privity was established between them and the complainants, in respect of the trust property, and no reason is seen why he may not be called on to account, not only for his acts as trustee, but for his manage-

Williams *vs.* West's Adms.

ment of the trust estate whilst acting as the agent of the original trustees, and especially if it be true, as the demurrer admits, that he has actually acknowledged his obligation to do so. I am, therefore, of opinion, that the first three grounds of demurrer are untenable.

The fourth and fifth objections take the ground, that the personal representatives of McDonald and Pierce are necessary parties to so much of the bill as relates to the matters connected with the defendant's agency. But the bill charges, and the demurrer concedes, that no portion of the funds, or any papers or documents connected with the trust estate, ever came to their hands, and consequently, no personal responsibility could have attached to them, nor could they aid in taking the accounts. Not only all the trust property, but all the papers connected with the trust, as well during the agency of West, as since, are alleged to be in the hands of the defendant, and therefore, I do not clearly see any necessity for the presence of the representatives of the original trustees as parties. There could be no decree against them, nor could they assist in adjusting the accounts, and if made parties, and the allegations of the bill had been supported by the proof, they must have been dismissed at the hearing. My opinion, therefore, is, that they are not necessary parties. What has been said is an answer to the sixth cause of demurrer, for if it be true, as I think it is, that the original trustees were not liable, personally, for the claim of the complainants, then no suit at law or in equity could or can be maintained against them or their personal representatives in respect to this demand.

"My opinion is, that West was to be paid out of the trust estate, and the person who has possession of that estate is the person to whom he and those who represent him must look, precisely as the creditors of a deceased debtor must look to the administrator *de bonis non*, if the first administrator dies without paying him. The seventh and eighth grounds of demurrer, which reiterate the want of privity between the complainants and the defendant as trustees, have been dis-

posed of in what has been already said.    Such privity, I think, does exist, if the statements of this bill are true.

"The ninth cause of demurrer is, the absence, as parties, of the creditors of West, who are mentioned in the schedule annexed to the deed of trust.    But the bill alleges, that the complainants do not know whether any of that class of creditors remain unpaid, and it calls upon the defendant to discover which of them, if any, are not paid, to the end that if necessary, they may be made parties.    This being so, it would be imposing a hardship upon the complainants to say, your bill shall be dismissed for want of parties, or you shall be compelled to amend and make proper parties, when the defendant, who makes the objection, is the only person who can give you the necessary information but refuses to furnish it. The authorities, I apprehend, are against such a doctrine. *Story's Eq. Pl.*, sec. 92, *Bowyer vs. Covert.* 1 *Vern*, 95. *Mitf. Pleading*, 5th Ed., 207, 208.    There is too in this case, an additional and very strong reason why the complainants should not be required to bring the persons mentioned in the schedule before the court.    The trust deed was executed in the year 1805, *forty-four* years ago, and therefore the presumption is powerful, that their claims have been satisfied, and hence, until the contrary is shown, there appears to me no good ground for saying that the claim of these complainants is in competition with those parties.

"The tenth ground of demurrer is, that the defendant was appointed trustee by Baltimore county court, sitting as a court of equity, and that no reason is assigned why he should be called to account touching his acts as trustee in this court. It appears from the record, that the original bill in this case was filed on the equity side of Baltimore county court, and that the cause was upon the defendant's suggestion and affidavit transferred to this court, and it would be a little anomalous if the defendant, afterwards, should be permitted to urge this objection. In the case of *Strike vs. McDonald*, 2 *H. & G.*, 191, the Court of Appeals decided, that when a cause is transmitted from Baltimore county court to the court of chancery,

under the act of 1824, ch. 196, the proceedings are to be viewed as having taken place in the same tribunal, and therefore, this cause must be regarded as a continuation of the suit in Baltimore county court. The danger of conflict and confusion referred to by the chancellor and the Court of Appeals, in *Brown vs. Wallace,* 4 *Gill and John.,* 480, cannot exist in a case like the present. Assuming the trustee, Williams, to have been a trustee appointed by Baltimore county court, and that he and the trust fund were under the exclusive control of that court, (though the latter concession can scarcely be made,) it by no means follows, that upon this record this court may not compel him to account, though upon a bill originally filed here it would have no power to do so. If the reverse is the case, then the act of Assembly of 1824, which authorises the transfer of cases from Baltimore county court to this court must be restricted by construction within narrower limits than its language plainly imports; for it can hardly be contended, that the power of removal exists, and yet the court to which the cause is removed has no power to act in the premises. But I am further of opinion, that the defendant cannot be regarded as the trustee of Baltimore county court, and that he and the trust fund is under the exclusive control of that tribunal. The decree passed by that court, upon the death of the original trustees, simply empowered the defendant to close and settle up the trust estate of West, according to the terms and conditions of the deed of trust theretofore executed by him. It conferred upon the defendant no new powers, responsibilities or duties, nor did it require him to account with, or to report to, that court in reference to the execution of his trust. It merely placed Mr. Williams in the office occupied by the trustees named in the deed to complete what was left unfinished by them, but it did not make him the trustee of the court, and bound to perform his trust under its supervision and control; and therefore, I think that court cannot be considered as having exclusive jurisdiction over him and the trust estate. This is not like the case of *Penn vs. Brewer and Boyle,* 12 *G. & J.,* 113, in

which it was decided, that a trustee, appointed by the court of chancery, is an officer of that court, acting under its direction and authority, and in that tribunal must be held responsible for what he does in the discharge of his duties, as far as concerns matters of equitable jurisdiction.    The trustee in this case was not to act under the direction and authority of the court which appointed him, but his powers and duties were prescribed by the deed of trust.    He was to proceed in the settlement of the trust precisely as had been done before, and his appointment did not in any respect change the conventional character of the transaction.    But it is urged, that upon the proceedings in the Baltimore county court, appointing the defendant·trustee, this present bill by the administrators·of West, might have been engrafted, and that even Baltimore county court would not permit any proceeding against Williams, except in that case, upon the principle, that courts of equity discourage multiplicity of suits; and the cases of *Hammond vs. Hammond,* 2 *Bland,* 346, and *Deakin's case,* 398, of the same book, are referred to.    These cases do show, that a creditor's suit may be engrafted upon another suit, and the latter of them decides, that an *ex parte* petition to appoint a trustee to sell under a will, in pursuance of the act of 1785, ch. 72, may be treated as a creditor's suit.    There are no doubt many cases which, instituted for one purpose, have been fashioned by subsequent proceedings to accomplish some other purpose not originally contemplated, but it would, I presume, be difficult to find a case in which it has been decided, that though you may thus mould an existing suit, and give it a form and object not originally designed, that you will be compelled to do so, and that if you adopt a distinct proceeding to accomplish the new purpose, you will be told, your only course was, as the late chancellor said, an engraftment of the new scion upon the growing stock, which was never designed for such fruit as you wish by the engraftment to cultivate.    It can hardly be maintained, I think, that when the late chancellor said in the cases referred to, that a creditor's suit might be grafted upon another suit, having a differ-

ent object in view, that he meant to say, that the creditors would be compelled to adopt that course, and that they would not be permitted to file an original creditor's bill and proceed directly to the attainment of their object. Suppose then, in this case, it be conceded, that the complainants might have filed their petition in Baltimore county court, in the case in which the defendant was appointed trustee, does it therefore follow, that they might not proceed, by original bill in the same court, to compel the trustee to account for his trust? There certainly appears to be nothing in the proceedings in the original suit there which would facilitate, simplify or cheapen the litigation which must attend an investigation of the matters involved in this bill, and hence, I can see no good ground for saying that the complainants should have made their application for relief in that case; on the contrary, as a general rule, it seems to me better not to involve and complicate one case for one purpose, with another case for another and very different purpose. I think it then very clear, that Baltimore county court would not have been deterred from granting the complainants relief upon their present bill, because of the existence of the proceeding in which the defendant was appointed trustee, and that bill being now in this court by the act of the defendant, in conformity with the law of 1824, I cannot think the demurrer upon this ground can be maintained. The tenth ground of demurrer, therefore, in my judgment, cannot be sustained.

"The eleventh cause of demurrer is upon the ground of multifariousness, or perhaps, more properly speaking, on account of an alleged misjoinder of claims, supposed to be of so different a character that the court will not permit them to be litigated in one record. The idea is, that the claim against the defendant as trustee, should not be embraced in the same bill in which he is called to account for his conduct as agent. It is, as has been said by an eminent writer upon equity pleading, utterly impossible to lay down any rule universally applicable as to multifariousness, or to say what constitutes multifariousness as an abstract proposition. The present is not

the case of a demand of several matters of a distinct nature against several defendants, as in the case of *White vs. White,* recently decided by the Court of Appeals, but it is, as is supposed, the uniting in one bill of several matters perfectly distinct and unconnected, against one defendant, or rather an effort in one bill to make one defendant answerable for matters affecting him in two distinct capacities.   The case of *Davoue vs. Fanning,* 4 *John's Ch. Rep.,* 199, is an authority to show, that a demand against the defendant as executor, and a demand against him in his private character, cannot be blended in the same bill, for the reason given by Lord Eldon, that two things don't hang properly together; or as stated by Mr. Justice Story, because of the inconvenience of mixing up distinct matters which may require very different proceedings or decrees of the court, and embarrass the defendant in his proper defence against each.   But where there are two good causes of complaint, growing out of the same transaction, and the relief asked for in relation to each is of the same general character, the bill is not obnoxious to the objection of multifariousness, though brought against several defendants, and *a fortiori* against but one.   *Varick vs. Smith,* 5 *Paige Rep.,* 160.   In this case the defendant acted for many years as the attorney and agent of the original trustees, with powers coextensive with the deed of trust to them, without, as the bill alleges, their interfering in any respect or to any extent with his conduct in the management of the trust.   If the averments of the bill are true, and the demurrer admits them to be true, the defendant was in substance as much the trustee, prior to his appointment by Baltimore county court, as he was afterwards.   The legal title to the trust estate was, of course, in the trustee, but the control, management and disposition of it was in the defendant, and upon the devolution of the legal title upon him by the decree of the county court, his actual authority was the same as it had been under the letter of attorney from the former trustees to him.   Looking at the case in this point of view, I cannot see why the defendants may not, in the same bill, be called upon to ac-

count for his management of the trust estate for the entire period he has had the actual management of it. I cannot see how the defendant will be embarrassed in his defence, or in what respect the blending these matters in one bill will require different proceedings or decrees. The trust estate is to be accounted for; it is upon that estate that the complainants' claims rest, in the first instance, and out of which they are to be paid if established, unless a personal responsibility may have supervened by some neglect, misapplication or default on the part of the defendant; and this personal responsibility will be as applicable, in the contingency supposed, to the management of the trust estate by the defendant in both capacities. The property which had been in the hands of the defendant as agent, became, upon his appointment of trustee, in 1836, vested in him in the latter capacity, the law attaching the possession to the capacity in which of right it ought to be held. *Flickinger vs. Hull*, 5 *Gill*, 60. The defendant, therefore, holds the property, out of which, in the first instance, the complainants, if they have a claim, are to be paid as trustees, and, as has been already remarked, his personal responsibility attaches upon the same contingency with reference to both the capacities in which he has held it, and for which he is called to account. It does not seem to me, therefore, that these claims are of that distinct character as to make the bill multifarious for blending them. It follows from these views, that the demurrer must be overruled."

This cause was argued before LE GRAND, C. J., ECCLESON and MASON, J.

*Wm. Schley* for the appellant, insisted upon his several causes of demurrer.

The deed authorises the payment of *necessary expenses*. The agent was to account with the trustees, and the latter with the creditors.

The appellees say the appellant is answerable both as agent and trustee. This makes the bill multifarious, for you can-

not sue in the same bill a party in his own right and as administrator. On this point, see *White vs. White*, 5 *Gill*, 359, and *Doub vs. Thomas*, 8 *Gill*, 6 *to* 9.

The creditors are not made parties either actually or *constructively* in the usual proceedings of a creditors bill. How can we tell the condition of the trust estate without bringing in the trust fund received by Pierce and McDonald?

Again, the complainants should have proceeded in Baltimore county court, in the case in which the appellant was appointed trustee, and not by an independent bill. The decree in that case appointed the appellant trustee to complete the trust under the deed. He was to give bond, and a creditor had two modes of proceeding, first, by suit on the bond, and second, an attachment might have been issued by Baltimore county court. Though the decree made the appellant a trustee under the deed, yet he was an officer of the court which appointed him. That case ousted the jurisdiction of the court of chancery and of the county court over this trust, in any proceeding, except in that case. See act of 1785, ch. 72, sec. 4. 3 *Bland*, 346. 2 *Bland*, 398, 407.

Suppose the representatives of Tiernan were to file an application in the case where appellant was made trustee, would not the county court compel the trustee to account, according to the case in 2 *Bland*, 398? Would that court admit that their jurisdiction was ousted by the present proceeding in chancery? Such conflict of jurisdiction would not be allowed. See 1 *Md. Ch. Decisions*, 351.

In the case of *Conner vs. Ogle*, Mss., the party was held liable as executor for the personal property. Again, where the court of chancery appoints a trustee in the place of a deceased trustee, that court will take charge of the trust and administer it. In *Conner vs. Ogle*, the decree ordered the trustee to bring the money into court. This decree did not do so, but the principle is the same. As soon as the trustee was appointed, he was an officer of the court, and the court in that case had the control of the fund. See, also, *Deacon's case*, 2 *Bland*, 398. 7 *Gill*, 483, 484, 486, 487, *Winn and*

*Ross, vs. Albert and wife.* 2 *Md. Ch. Dec.,* 361, *Frieze vs. Glenn and Stewart.* If the appellees can file an independent bill, so can any other creditor or *cestui que trust.* A constable, for his fees, might do so.

The complainants have no title to sue the appellant. This includes the first, second, third, seventh, eighth and twelfth causes of demurrer. Under the deed Williams *only* has the right to *detain* and *retain* the expenses, that is his expenses. The trustees had no right to *advance* in favor of any creditors, and if not, how could the agent have a lien for advances? Claiming for payments will not do, if the claims paid are not shown. A general statement of a claim will not do; the foundation of it must be set out. The balance of the claim is $7000 upon an award, which the bill says has been acknowledged by the former trustees, and also by the present trustee. But their acknowledgment cannot create a lien on the fund.

West or his representatives have no claim on the trust fund. If there is any such claim, it must be made through the administrators of the former trustees, and they ought to be parties. This includes the fourth, fifth, fifteenth and sixteenth causes of demurrer. The representatives of these trustees are interested in the account asked by the bill.

There is no privity. This is second ground of demurrer. Williams, *as agent,* was alone responsible to the trustees.

*Alexander* for the appellees.

1st. The bill states claims on the part of the complainants against the trust estate, for advances made by West, their intestate, for and on account of that trust estate, and for services rendered to the same, which claims were recognised by the original trustees and by the defendant, as well during his agency as since his appointment as trustee. It states no case of personal liability on the part of the original trustees, nor does the record disclose a case, out of which such personal liability must of necessity have arisen. For whilst it may be admitted that the agent and his principals might have so dealt together, as to confer on the agent a right of action against

his principals personally, for advances made by him at their instance for the trust estate, it is insisted that it was equally competent for these parties to stipulate, that the remedy of the agent should be against the trust estate exclusively for reimbursement of his advances, and for compensation for services rendered to the estate. And the averments of the bill in this case implicitly negative and exclude the idea of personal obligation on the part of the trustees, by expressly asserting claims against the trust estate as the only debtor. Hence the remedy of the complainants is exclusively by suit in equity, against the proper representative of the trust estate.

2nd. The defendant, as the existing trustee, is a proper and necessary party to the suit of complainants, as creditors of the trust estate. And as it is averred that the original trustees had no trust funds in hand, and that all the papers and accounts relating to the trust, including the evidence of the claim of the complainants, are in the hands of the defendant, and that the claim has been admitted by the defendant himself, there can be no necessity or propriety for making the representatives of the deceased trustees parties to this suit. We could have no redress against them, and they could not aid us in the accounting.

3rd. The omission of the complainants to make the creditors of the grantor parties to the suit, is not cause for demurrer to the discovery sought. In the first place, the complainants know not which of the creditors are yet unsatisfied, and the discovery is sought in part for the purpose of ascertaining whether any, and if any, which of said creditors remain unsatisfied, and would be proper to be made parties to this suit. And in the next place, after the discovery is obtained, the unsatisfied creditors, if any, may be made parties, by notice or amendment, in time to be present at the taking of the account and final hearing.

4th. This cause originated in Baltimore county court, as a court of equity, and having been removed at the instance of defendant, stands in reference to jurisdiction in the same state and condition, as if it was still depending in Baltimore county

court. And therefore the tenth cause of demurrer cannot be sustained. But this decree was not passed in the course of a regular litigation commenced by bill, but on a summary application by petition, and the court did not thereby profess to assume the administration of the trust estate, but simply appointed a trustee for closing up and settling the trust, according to the terms and conditions of the deed of trust. The amended and supplemental bill does not make this a new case, but is a continuation of the original bill. The bond there given is simply "to peform the decree." The case in 4 *G. & J.*, 493, and 1 *Md. Ch. Decisions*, 351, are very different from this.

5th. The complainants are entitled to require from the defendant a discovery of the state of his accounts as agent for the original trustees. It may be conceded, that ordinarily and during the lives of the original trustees, the defendant, as agent, was accountable only to the trustees, as his principals. But, on the suggestion of collusion or other special circumstances, the complainants might have sued the agent and his principals jointly. And after the death of the original trustees, and the appointment of a third person as trustee, the agent would have been accountable to such third person, as the representative of the fund. And therefore, as the former agent is now trustee in the place of the original trustees, and the liability to account, and the right to require the account, have become united in the same person, the complainants, or any others interested in the fund and entitled to an account from the trustee, may require from that trustee a discovery or account of his administration as agent. Upon the union of these two capacities, the law presumes that the defendant has in his hands, as trustee, any moneys which he may have received as agent, and for which he remained accountable as agent, at the time of his appointment as trustee. The adjustment of his account as agent, is indeed indispensable to the correct and final administration of the trust in his hands as trustee. 2 *G. & J.*, 228. 1 *John's Ch. Rep.*, 305. 17 *L. L.*, 25. *Calvert on Parties.*

6th. As a corollary from the last point, it is denied that the bill has been made multifarious, by requiring from the defendant an account of his dealings with the trust estate in his capacity of agent. This account is, as before stated, indispensable to the completeness of his account as trustee, and it is only as matter of pleading, and to give to the defendant the benefit of his answer in relation to such account, that the complainants were required to incorporate in their bill any specific charges in relation to the agency.

LE GRAND, C. J., delivered the opinion of the court.

This case comes before the court on an appeal from an order of the chancellor, overruling the demurrer of the appellant to the bill of the appellees exhibited against him. The seventeen causes assigned, by way of demurrer, will be examined in the order of the classification to which they severally belong.

The demurrer admits the truth of all the facts and averments of the bill, and the questions presented for our consideration, arise out of the facts so admitted.

The first three causes of demurrer relate to the alleged *agency* of the appellant. The point of the first and third is, that the bill exhibits no *title* in the complainants to the discovery or relief sought in that behalf; and that of the second and seventh, that it establishes no *privity* between complainants and defendant, as respects his acts as agent.

The bill after stating the execution of the deed, the assumption of the powers of the trust by Pierce and McDonald, that they, in pursuance of the authority conferred on them by the deed, appointed James West their attorney, to sell and dispose of the property conveyed, with power to apply the proceeds in execution of the trust. That West, by virtue of the power thus conferred on him, performed various duties in the sale of property and collection of debts, from the date of his appointment in 1805, until his death, in the latter end of 1809, and, during that time, had advanced to or for the preferred creditors, or to or for the use and benefit of the trust,

or for account of the trustees, the sum of $2898.48, over and above his receipts as agent of the trustees. That these advances were frequently recognised by the trustees and have been but partially paid. The bill further states, that after the death of West there was awarded to his estate, by arbitrators, with the consent of the trustees, the further sum of $7000 for the services of West, rendered by him to the trustees as their agent and attorney; that to the extent of these claims and allowances, they being made for proper costs and expenses attending the execution of the trust, the trust was relieved from the burthens of the first class of preferred creditors. The bill then proceeds to state, that after the death of West, on the 25th of February 1810, by letter of attorney under seal, the trustees appointed the appellant their agent and attorney, and conferred upon him the same power which had been formerly conferred on West; that the appellant, as such agent, afterwards *adopted, acted upon, ratified and acknowledged the claims* of the appellees as administrators of West, and, from the time of his appointment to the filing of the bill, had knowledge of the claim, as one entitled to be paid out of the trust estate, in preference to the claims preferred in the schedule annexed to the deed. The bill further alleges, that the appellant, as agent and attorney, took into his possession, all and singular, the books of accounts, vouchers, documents, receipts and evidences of debt, muniments of title, deeds and correspondence, *as well of West*, as of the trustees, and undertook to manage the sales, collections and receipts of the trust and its funds, and also the payment of its charges, debts and creditors; that the trustees had left to the appellant, and as his duty, to pay off the charges and debts in their just and equitable order, and that the appellant, as agent, assumed and undertook to do so, *and did in fact, from time to time*, between the years 1810 and 1832, pay appellees various sums of money.

These averments, and they are by the demurrer admitted to be true, undoubtedly establish a sufficient *privity* between the parties to this suit to give the appellees a standing in

court. They show an acknowledgment of the justice of the claim and a recognition of its binding character. It would be difficult to imagine how more clearly privity between the parties could be shown, than by the assertion on the one side of a claim, and an acknowledgment of it on the other, and this is precisely the case as it appears before this court on bill and demurrer. The same remark may be made in regard to the first and third reasons assigned in support of the demurrer. The bill avers, that the appellant, as agent, took into his possession the books, vouchers and documents of West, and that he has not settled any account with the complainants. These facts clearly entitle them to a discovery of the true condition of the fund, and the state of the accounts between them as the representatives of West and himself as agent.

The fourth, fifth, fifteenth and sixteenth causes urged in support of the demurrer are in substance the same. They present the point, whether the personal representatives of Pierce and McDonald are necessary parties to this proceeding.

As the case is disclosed to us, we are of opinion, that the personal representatives of neither Pierce nor McDonald are necessary parties to this proceeding. The bill substantially avers, that from the time of his appointment as agent, he has had the *exclusive* control of the funds of the trust, together with all the evidences of title and of debts due to the estate, and that neither the executors or representatives of the original trustees ever intermeddled with the trust, and that the appellant never accounted with them. These facts establish his relation as that of a trustee, holding the assets of the estate for the benefit of the *cestui que trusts*, and, as such, accountable to them for their proper administration.

The eighth and twelfth reasons urged on behalf of the appellant are, in substance, the same, although somewhat different from each other in the language in which the point is presented. The first announces the proposition, that the claims set up by the appellees are not proper to be paid out

of the trust estate. The latter asserts that complainants are not, nor was West, a creditor under the trusts of the deed.

The deed clearly authorised the original trustees to appoint an agent and to pay all proper expenses and costs attending the execution of the trust, and the bill avers, that a sum of money was advanced by West in furtherance and in aid of the purposes of the trust; that this sum was ascertained, as also a proper amount for compensation for his services as agent, and that the trustees devolved on the appellant the obligation to pay these sums out of the trust estate, and that he undertook so to do, *and in fact* did, in part fulfilment of his undertaking, partially discharge the duty and obligation which he assumed. It is, therefore, apparent from the deed itself, that the original trustees did not exceed their powers in the appointment of West as agent, and the bill avers, that the appellant recognized both the claims and the appellees, the one as just, and the other as the proper persons to receive the payment.

What we have said disposes also of the sixth and fourteenth reasons which turn the appellees over to the private estates of Pierce and McDonald.

The thirteenth objection urged is, that these claims are *legal* demands. It is unquestionably true, if there be a full, adequate and complete remedy at law, equity will not interfere to grant relief. But in the case made by the bill it appears, the appellant has never settled an account, and that he is in possession of the vouchers of West. One of the principal objects of the bill is to obtain from him an account, the production of the award of the arbitrators in favor of West, to the end that an account may be had for the purpose of ascertaining whether he has not trust funds justly and properly applicable to the payment of the balance due to the complainants, and that their claims may be accurately ascertained. These are all matters obviously within the jurisdiction of a court of equity.

The ninth and seventeenth reasons suggest, that the *cestui que trusts*, under the deed, are material and necessary parties.

The bill avers, that none of the second class creditors ever signed the deed, and that the complainants are ignorant whether any of the creditors of the first class remain unpaid, and prays that the appellant may discover which of them, if any, are now unpaid, to the end, that if necessary, they may be made parties thereto. When this information is had, it will be time enough to determine whether or not they should be made parties, which can be done at any time before final decree.

The eleventh reason assigned in support of the demurrer is, that the bill is multifarious, in suing appellant as trustee and as agent. It appears, that on the death of the trustees mentioned in the deed, the appellant was, by a decree of Baltimore county court, sitting as a court of equity, appointed trustee, on the 21st September 1836, for the closing of the trust, according to *the terms* and conditions of the deed.

It is not at all times an easy task to ascertain what will render a bill obnoxious to the charge of multifariousness. But in the case made by the bill now before us we experience no difficulty. The rule is sufficiently well explained by the chancellor in his opinion in this case, and by the authorities brought together in 8 *Gill*, 7. The principle seems to be this, that a complainant shall not be permitted to join in the same bill claims of an entirely different character and growing out of transactions in which the party charged acted in dissimilar capacities. For instance, a party will not be permitted to unite in the same bill a claim against the defendant, contracted by him in his private capacity as a citizen, with one arising out of his contracts made while acting as a public officer. The reason of the rule is, that the defendant shall not be compelled to complicate his defence by combining matters which have no necessary connection with each other. But this reason cannot exist in a case like this. From the first association of the appellant with the trust estate of West to the present time, he had occupied in truth but one capacity, that of a fiduciary. He had, whilst agent, under the power of attorney appointing him, the same power he has enjoyed since he became trus-

tee. There could be no doubt, that if he had, as trustee, received from a third party a debt due to the estate he could be held responsible as trustee for it, and we can discover no difference between such a case and the one presented by the record. The moment he became trustee under the appointment of Baltimore county court, by operation of law, the funds and assets which he previously held as agent became assets in his hands, for which he was liable to account as trustee. It is precisely like the case of a person receiving, as administrator, a sum of money which belongs to his ward. In such a case he would be regarded as holding the money as guardian and not as administrator.

The remaining objection, is one to the jurisdiction of the high court of chancery. It is said, that the decree of Baltimore county court, sitting as a court of equity, whereby the appellant was appointed trustee to execute the trusts of the deed from West to Pierce and McDonald, gave that court *exclusive* jurisdiction over all the subsequent proceedings of the trustee. And, moreover, that this jurisdiction could only be exerted *by a continuation of the proceedings in the particular case in which Williams was appointed trustee.* We cannot concur in this view.

It may be admitted that it was competent for Baltimore county court to allow to be engrafted on the proceeding which had been commenced on the motion of Tiernan and others, the suit which is now the subject of our consideration; but it does not necessarily follow from this, that the parties could not seek relief by original bill as they have done in this instance.

As we understand the decree of Baltimore county court, it fulfilled its intended office when it invested the appellant with the powers which had been possessed by Pierce and McDonald under the deed of West. He was by it appointed trustee "for the closing and settling up of the aforesaid trust of the late James West, *according to the terms and conditions of the said trust heretofore executed by the said West to and in favor of Humphrey Pierce, and Alexander McDonald.*" There was no requirement in the decree that the appointee should

make any return to, or abide by any further order of the court. It did, in fact, nothing more than substitute the appellant for the original trustees, and like them he could be held to an accountability on an original bill filed for that purpose.    By adopting this course there could not be, by possibility, any conflict of jurisdiction.    The original proceeding could establish nothing but the appointment of Williams, and this fact could in no manner prejudice his rights in an independent suit otherwise than they would be affected by it had that original proceeding been extended so as to embrace the entire subject of the administration of the trust.    Besides this, we think the objection should have been urged in the county court, before the removal of this case to the high court of chancery.    After the removal it comes with but slight force from the party at whose instance it has taken place.    We agree with the chancellor in opinion, and for the reasons given by him, that the act of 1824, which authorises removals from the county courts to the court of chancery ought not to receive the construction contended for by the able solicitor of the appellant.

We have, of course, only expressed our views of the case as exhibited by the bill of the complainants, the truth of all the statements and averments of which is admitted by the demurrer interposed by the appellant.    We, of course, express no opinion upon the rights of the complainants, as they may arise out of the facts which may be exhibited by the further proceedings in the cause.    When such discovery is made, it will be time enough to apply the principles which have been recognized in the case of *Collinson vs. Owens,* 6 *Gill and Johnson,* 4.

<div align="center">

*Order overruling demurrer affirmed, and*
*cause remanded for further proceedings.*