BARTHOLOMEW TABER & another *vs.* SAMUEL B. HAMLIN.

A bill of sale of personal property given by A. to B. as security for B.'s promissory note lent to A., and an instrument of defeasance executed by B. as part of the same transaction, by the terms of which "the bill of sale is to be surrendered to A. in case said note is provided for by A. at maturity," constitute a mortgage, which, in the absence of any agreement of the parties to the contrary, is a continuing security for the amount for which B. continues to be responsible as maker of that and other successive promissory notes with the proceeds of each one of which the former note is provided for at maturity, and which are procured by A. from B. for that purpose.

When, under Gen. Sts. *c.* 151, a mortgage of personal property is valid without being recorded, the notice of intention to foreclose it is valid also without registration.

BILL IN EQUITY by the assignees in insolvency of the copartnership of Jenney & Tripp, praying for an account from the respondent of the amount received by him from the sale of one-sixteenth of the whaleship Lydia and its outfits and catchings, and for the payment by him to the complainants of a balance alleged to be due after satisfying all his lawful demands against the insolvent firm. The answer alleged title in the respondent to the said property and its entire proceeds. The case was reserved by *Gray,* J., for determination by the full court, on the bill, answer, and an agreed statement of facts which was substantially as follows:

On July 18, 1860, Jenney & Tripp, residing at Fairhaven, borrowed from the respondent his promissory note for nine hundred and ninety-six dollars and eighty-five cents, payable in four months to them or their order, and gave him, as security, a bill of sale, absolute in form, of one-sixteenth of the Lydia and its outfits and catchings, the ship being then absent on a whaling

voyage. At the same time and as part of the same transaction the respondent signed and gave to them the following instrument: " Received, Fairhaven, 7 mo. 18, 1860, of Jenney & Tripp a bill of sale of one-sixteenth of the ship Lydia, outfits and catchings, valued at twenty-one hundred and fifty dollars, the same being for security on my note in their favor of this date at four months for nine hundred ninety-six and 85-100 dollars, given for their accommodation, with the understanding that the above bill of sale is to be given up and surrendered to them in case said note is provided for by them at maturity."

Jenney & Tripp caused the note to be discounted and received its proceeds to their own use, and when it became due procured another note from the respondent, caused it to be discounted, and with its proceeds paid the first note, and repeated this process several times, the last note falling due March 25, 1862, which they failed to pay and which was paid by the respondent. Nothing was said by either party about the bill of sale at any of these renewals.

On the day of his payment of this last note, the respondent signed and served on Jenney & Tripp, the following notice: " New Bedford, March 25, 1862. To Jenney & Tripp, Fairhaven, greeting : You are hereby notified of my intention to foreclose the mortgage or bill of sale of the one-sixteenth of ship Lydia, outfits and catchings, conveyed to me July 18, 1860, for breach of the condition thereof." This notice he caused to be recorded in the custom-house at New Bedford, where also the bill of sale was recorded; but neither of them was ever recorded in the office of the town clerk of Fairhaven.

Jenney & Tripp had become embarrassed in business during the winter of 1861–1862, and after negotiations for a settlement with their creditors during the following spring, they went into insolvency in June, 1862, and the complainants were duly appointed assignees in July. On April 8 the respondent had received from the firm a notification that a meeting of their creditors would be held on April 15, and until then he had no knowledge of their insolvent condition.

The Lydia returned from her voyage on May 17, 1864, when

the respondent took personal possession, as absolute owner, of the interest in the vessel and its outfits and catchings which was covered by the bill of sale, and some months afterwards sold it, and received the proceeds; and afterwards the complainants, who at the time of their appointment as assignees were aware of all the facts above stated as occurring prior to that time, demanded from the respondent an account of the proceeds, and the payment of any balance over and above the amount of the indebtedness to him of Jenney & Tripp, alleging that he held said proceeds only as security for the note which he lent to the firm on July 18, 1860.

*O. Prescott,* for the complainants. 1. The bill of sale was not a mortgage, in form or substance, but a pledge. *Portland Bank* v. *Stubbs,* 6 Mass. 422. The parties treated it as a pledge of property held in trust by the respondent as security for the successive notes. The just rights of all will be secured by considering it as having been sold under the Gen. Sts. *c.* 151, §§ 9, 10, and requiring the pledgee to account for his balance. *Newton* v. *Fay,* 10 Allen, 505.

2. But, if the conveyance was a mortgage, there has been no breach of the condition. The note for which it was given as security was provided for by Jenney & Tripp at maturity, according to the terms of the conveyance.

3. And, if there has been a breach of the condition, there has been no foreclosure, and the complainants are entitled to redeem. The mortgage has never been recorded under Gen. Sts. *c.* 151, § 1; and although by § 2 such record is not essential to the validity of the mortgage, yet if not so recorded it is not capable of foreclosure under the provisions of that chapter.

*J. C. Stone,* for the respondent.

FOSTER, J. A bill of sale of personal property intended by both parties as a security for money lent, and an instrument of defeasance executed as a part of the same transaction, by the terms of which on payment of the note at maturity the bill of sale is to be given up and surrendered, must be construed together. And the two instruments constitute a mortgage, by all the authorities in this Commonwealth. *Potter* v. *Boston Loco*

*motive Works,* 12 Gray, 154. *Carpenter* v. *Snelling, ante,* 452 The successive renewals of the notes secured by mortgage were not a payment of the mortgage debt. It therefore remained a valid and subsisting security ; and the condition of the mortgage was broken when the note last given remained unpaid after its maturity.

Registration is not necessary to the validity of a mortgage of a ship or vessel, nor of goods at sea or abroad, if the mortgagee takes possession of them as soon as may be after their arrival in this state. Gen. Sts. *c.* 151, § 2.

The principal question in the present case is whether the mortgage has been duly foreclosed. At common law a mortgage, not a pledge, of personal property seems to have transferred the property absolutely to the mortgagee upon a breach of the condition. No process of foreclosure was necessary, and no right of redemption remained. Some authorities held that the mortgagor might maintain a bill in equity to redeem within a reasonable time after forfeiture ; but this rule was neither clearly settled nor universally admitted, and has never been recognized in this Commonwealth. See 2 Hilliard on Mortgages, *c.* 50, where the cases are collected. The first statute regulation of this subject is found in the Rev. Sts. *c.* 107, § 40, by which the mortgagor of personal property is allowed to redeem at any time within sixty days after condition broken. By the St. of 1843, *c.* 72, § 1, the right of the mortgagor is not to be forfeited until sixty days after the mortgagee has given written notice of his intention to foreclose said mortgage for a breach of the condition thereof, and caused a copy of such notice to be recorded in the town clerk's office *where the mortgage is recorded.* The Gen. Sts. *c.* 151, §§ 4, 5, 6, 7, continue in effect the same provisions. Section 7 provides that the notice with an affidavit of service shall be recorded *wherever the mortgage is recorded.* Section 8 enacts that " if the money to be paid or other thing to be done is not paid or performed or tender thereof made within sixty days after *such notice is so recorded,* the right to redeem shall be foreclosed."

What then is the mode of foreclosure, where the mortgage is not, and is not required to be, recorded in any town or city

clerk's office? The plaintiff contends that by the letter of the statute there can be no foreclosure until sixty days after such a record of the notice. If this be so, then none of the statute provisions above recited apply to the present case. A recording of the foreclosure notice in a place where the mortgage is not required to be recorded would be wholly ineffectual and not within the language of the act. To hold that a mortgage valid without registration is incapable of foreclosure in any manner seems to us an inadmissible construction of provisions the object of which was to regulate rights of redemption and modes of foreclosure. If we were forced to conclude such to be the result of the legislation on the subject we should probably hold that there could be redemption in equity only within a reasonable time, which by analogy would not exceed sixty days. We prefer, however, to give the statute system such an interpretation that it will embrace the foreclosure of mortgages not required to be, as well as those which must be, recorded. Accordingly we hold that such mortgages are to be foreclosed like others, by sixty days' notice of the intention to do so, served as required by the statute; but that in the cases where no registration is necessary this exception applies to and includes the notices of foreclosure as well as the mortgages. Where the mortgage is valid without being recorded, the foreclosure notice also is sufficient without registration. This seems to us to be the fair result of the language, and the only rational interpretation of the meaning of the statute. Thus construed, its provisions make a complete and harmonious system.

It follows that the mortgage in the present case has been duly foreclosed, and this bill must be dismissed with costs.