THOMAS H. GAITHER *vs.* MARGARET E. CLARKE, by her next friend, JOSHUA T. CLARKE.

*Proceeding by Mortgagee to have Mortgaged premises Sold— Usury—Equity pleading and practice—Deed and Lease held to be merely a Security for the Loan of Money—Deciding a case as between Co-defendants—Evidence.*

M., being the mortgagee of real estate under a deed of mortgage from C., filed a bill in equity against C., and T. as devisee of G., claiming that a deed of said land from C. to G., under whom T. claimed, and a cotemporaneous lease of the same land by G. to C., made prior to said mortgage, were in effect a mortgage to secure a loan from G. to C. at a usurious rate of interest, and that she was entitled to have the true nature and effect of said deed and lease declared, and if any amount were still due on account of said loan, that it should be ascertained under the direction of the Court; and praying for a sale of the mortgaged premises, and that the proceeds of sale be applied to the payment of incumbrances according to their legal priorities. HELD:

1st. That it was not necessary under the circumstances for M. to allege or show that she would be affected by the strict legal operation of the deed or lease, or that the leasehold estate would not be sufficient to satisfy her mortgage.

2nd. That if the contention of M. in regard to the nature and effect of the deed and lease was correct, she was entitled to treat them simply as a prior incumbrance to her own mortgage, and have whatever might be due T. ascertained, and paid out of the proceeds of sale of the mortgaged premises.

3rd. That this being a proceeding by a mortgagee to have the mortgaged premises sold, in order to determine what might be sold and what might be applied to the discharge of the plaintiff's mortgage, it became necessary to determine the question of the validity, and the true nature and effect of the deed and lease which stood ahead of the plaintiff's mortgage, and that question must be determined not only as between the plaintiff and the defendant T., but as between the co-defendants T. and C., and they would be bound by the determination.

Gaither *vs.* Clarke.

4th. That as the amount really due T. was unknown to the plaintiff, an offer in the bill to redeem by a tender of the amount so due was impracticable, and the only equitable requirement of her, was to express her willingness, which she did, to allow whatever was actually and fairly due.

5th. That the evidence showed that the original transaction between G. and C. was a loan of money at a forbidden rate of interest, and that the deed and lease were adopted as means to evade the law; they were intended as security for the loan and nothing more; and such being the case, it was immaterial that the transaction was made to assume the form of a sale and lease of the land.

If the transaction be really a borrowing and lending of money at an unlawful rate of interest, no ingenuity can give it a form that will shield it against impeachment and judicial investigation.

As a general principle of equity procedure, if the plaintiff can plainly and with certainty get at his rights and have them determined without trying and deciding a case as between co-defendants, the Court will not enter into such case. But it will enter into and decide such case, as between co-defendants, whenever it is necessary for the fair determination of the plaintiff's case; and the co-defendants will be bound by such determination.

A witness being requested to produce any letters he might have relating to the matter in controversy, produced his letter-press book containing two letter-press copies of letters addressed to M., since deceased, and he supposed that the originals were duly mailed to M. On objection taken to these copies, the originals were produced taken from among the papers of M. and bearing upon their envelopes the post-marks or stamps, and postage stamps, showing the dates of their passage through the post-office, and in every particular corresponding with the letter-press copies. HELD:

That the letters thus proven and identified, were properly admissible in evidence.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*George R. Gaither, Jr.,* and *William S. Bryan, Jr.,* for the appellant.

The demurrer to the bill should be sustained, because, even granting that the averments of the bill state such facts as would tend to prove that the complainant would be injured by the character of the alleged usurious transaction, there is no offer to redeem, and such relief would only be granted upon an *offer to redeem.* The complainant must "offer to do equity." *Trumbo vs. Blizzard,* 6 *G. & J.,* 18, 24; *Banks vs. McClellan,* 24 *Md.,* 62; *Montague vs. Sewell,* 57 *Md.,* 407; *Jones on Mortgages, secs.* 335 *and* 1095.

"The burden of proof that the mortgage is usurious is upon the mortgagor. He is impeaching his own obligation formally executed under seal, and must establish the facts to constitute usury beyond a reasonable doubt." *Jones on Mortgages, sec.* 643; *Wetter vs. Hardesty,* 16 *Md.,* 11.

The rule of evidence that the defence must be clearly made out, is applied both at law and in equity. *Conover vs. Van Mater,* 18 *N. J. Eq.,* 481.

Joshua T. Clarke has recited under seal that his interest in said property was under a lease, and that Mr. Thomas H. Gaither owned the ground rent, and that on the faith of these recitals, Mr. Thomas H. Gaither, by agreement, extended the time of redemption of said lease, and parted with certain rights which he had thereunder. By every principle of estoppel, Joshua T. Clarke is prevented from denying the facts which he has thus recited under seal, and on which Mr. Gaither acted. *Bigelow on Estoppel,* 355; *Lainson vs. Tremere,* 1 *Ad. & E.,* 792; *Cutter vs. Bower,* 11 *Q. B.,* 973.

*Bigelow on Estoppel,* 547, says: "Where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of those who cause such action, the rights so acquired are secure whether contested at law or in equity."

Gaither *vs.* Clarke.

Estoppel upon the parties to a deed operates also upon their privies. *Bigelow on Estoppel,* 357 ; *Taylor vs. Needham,* 2 *Taunton,* 279.

The effect of making a prior encumbrancer a party defendant to a bill to foreclose a subsequent lien, becomes, as far as the prior encumbrancer is concerned, *a bill to redeem. Jones on Mortgages, sec.* 1439 ; *Hudnit vs. Nash,* 16 *N. J. Equity,* 550 ; *Williamson vs. Probasco,* 8 *N. J. Equity,* 571 ; *Smith vs. Shaffer,* 46 *Md.,* 573.

The decree in this cause orders the property to be sold free of the encumbrances of all the parties to the suit. This defendant has *never* in any manner consented to the passage of such a decree. For this reason alone the decree below must be reversed. Under the pleadings and proof, the only manner in which a prior mortgage could be brought before the Court, at the suit of a subsequent encumbrancer, would be by a bill to redeem. *A fortiori* must such be the case where the relief asked for embraces the cancellation and reformation of regularly executed instruments. *Jones on Mortgages, sec.* 1060.

*William Stanley,* and *Joseph K. Roberts,* for the appellee.

Is there such a privity between Mrs. Clarke and Gaither as to entitle her to an answer from him, and to question the transaction between him and J. T. Clarke for usury ? We are aware that the defence of usury is considered to some extent a merely personal one—a contract of that kind not being always absolutely void, but only voidable at the instance of the borrower, *or those standing in legal privity with them.* Mrs. Clarke, the mortgagee, being the assignee of the equity of redemption, stands, we think, in such legal privity.

*Jones on Mortgages, sec.* 644, after citing the decisions of the various States, concludes by saying : " That the doctrine more generally adopted is, that not only the

mortgagor, but any person who is seized of his estate and vested with his rights, unless he has assumed the payment of his mortgage, may interpose the defence."

*Tyler on Usury*, 408, comes to the same conclusion. This Court, in the case of *Andrews vs. Poe*, 30 *Md.*, 485, recognizes the right of the assignee of the equity of redemption to take advantage of usury. See also *Rouskulp vs. Kershner*, 49 *Md.*, 516; *Barroll's Md. Equity*, 69; *Banks vs. McClellan*, 24 *Md.*, 81; *Tyler on Usury*, 414; *Thompson vs. Van Vechten*, 27 *N. Y.*, 568; *Schroeppel vs. Corning*, 5 *Denio*, 216.

Junior mortgages may. 39 *Penn. St.*, 361; 26 *Conn.*, 241; 4 *Kent Comm.*, 162; 30 *Md.*, 488; 2 *Md. Ch. Dec.*, 413.

In respect of the objection that there was no offer to redeem.—In the first place, Mrs. Clarke could not offer to redeem, because if there be any amount due, she is ignorant of it, and without an answer from Gaither, would not know how much to tender, and besides, a payment by her to Gaither would be of no benefit to her, as she could not compel him to assign her his rights, and she would be simply paying the debts of another party without being requested or benefited. What does a tender amount to? It is simply a recognition of the principle, that he who asks equity must do equity.

It has been held that the plea of usury must be accompanied with a tender of the amount admitted due, but in every case where it is so held, it has been a case where the party seeking to plead it was either the mortgagor himself or the owner of the *entire equity of redemption*, which is not this case. *Bispham's Principles of Equity*, sec. 222; 3 *Powell on Mortgages*, 935; *Hill vs. Reifsnider*, 39 *Md.*, 429; *Powell vs. Hopkins*, 38 *Md.*, 1; *Walter vs. Cockey*, 38 *Md.*, 75; *Gwynn & Co. vs. Lee*, 9 *Gill*, 102; *Baugher vs. Nelson*, 9 *Gill*, 299; *Thomas vs. Mason*, 8 *Gill*, 8; *Doub vs. Barnes*, 1 *Md. Ch. Dec.*, 127.

The proof clearly shows that the transaction between George R. Gaither and J. T. Clarke was a loan of money at a usurious rate of interest. That it never was intended that George R. Gaither should have the absolute ownership of this property, and the transaction assumes this shape simply for the purpose of covering it up, or as the witness Glenn, pertinently says, "because the rate of interest was over six per cent."

There can be no question as to the *bona fides* of the transaction between Mrs. Clarke and her husband. The proof shows clearly such a transaction and conveyance between husband and wife, as Courts have always upheld and sanctioned.

As to the claim of Thomas H. Gaither upon the property.—The evidence is conclusive, that the transaction between Geo. R. Gaither and J. T. Clarke was a loan of money; the intention of the parties was to secure a loan, and no matter what the form, the instrument creates a mortgage. *Tyson vs. Richards*, 3 *H. & J.*, 109 ; *Bank of Westminster vs. Whyte*, 1 *Md. Ch. Dec.*, 537 ; *Hicks vs. Hicks*, 5 *G. & J.*, 75 ; *Dougherty vs. McColgan*, 6 *G. & J.*, 275 ; *Artz vs. Grove*, 21 *Md.*, 456, 474 ; *Rouskulp vs. Kershner*, 49 *Md.*, 523 ; *Weller vs. Hardisty*, 16 *Md.*, 11 ; *Montague vs. Sewell*, 57 *Md.*, 407.

Mr. T. H. Gaither, as assignee, stands in the same position as his father did, and it matters not whether the security was distributed as a mortgage or ground rent. He took it in its real character, and liable to all deductions it was liable to in the hands of his assignor or ancestor. As to the position Mr. Gaither occupies, see *Montague vs. Sewell*, 57 *Md.*, 417 ; *Harris vs. Hooper*, 50 *Md.*, 548.

The Court will treat as a mortgage an absolute deed when given as security for a loan, and decree sale for payment. *Thompson vs. Banks*, 2 *Md. Ch. Dec.*, 431.

The Court has jurisdiction to take possession of the property for the benefit of those interested. *Thompson vs. Diffenderffer*, 1 *Md. Ch. Dec.*, 386.

ALVEY, C. J., delivered the opinion of the Court.

In this case, Mrs. Clarke, as mortgagee, filed the bill against her husband, the mortgagor, and the other defendant, Thomas H. Gaither, charging that prior to the date of the mortgage to her, which bears date the 25th of Sept., 1877, her husband had made a deed of the mortgaged premises, being the farm upon which he resided, to George R. Gaither, since deceased; and that, upon the same date of the deed, to wit, the 15th of Nov., 1869, and as part of one and the same transaction, George R. Gaither executed to Joshua T. Clarke, her husband, a lease of the premises for ninety-nine years, with covenant for renewal thereof, at an annual rent of $600, payable quarterly in advance, over and above all deductions for taxes that might be assessed upon the premises; with right reserved to Gaither of re-entry upon the premises for failure to pay rent or taxes, according to the terms of the lease. The farm contains about 400 acres of land, and the consideration expressed in the deed to Gaither is $5000. It is stipulated in the lease that Clarke should have the right of redemption, and a re-conveyance of the farm, upon payment of the principal sum of $5000, and all rent due, at any time between the 15th of Nov., 1872, and the 15th of December, 1872. This sum Clarke failed to pay within the time designated; but after the time for redemption had passed, George R. Gaither, on the 22nd of January, 1873, executed an instrument under his hand and seal, whereby he extended the time for "redeeming and relieving the aforesaid land," to the 15th of December, 1876, upon payment, *at that date*, of the $5000, and all arrearages of rent, and also agreed to reduce the rent to $500 per annum, to be paid in the manner as provided in the original lease.

Sometime after this arrangement, George R. Gaither died; and in the distribution of his estate, under his will, this reversionary estate and ground rent, according to the

Gaither *vs.* Clarke.

face of the deed and lease, were turned over to Thomas H. Gaither, one of the defendants. And before the time had arrived for redeeming the ground rent, as fixed by the agreement of the 22nd of January, 1873, Thomas H. Gaither, on the 13th of Nov., 1876, agreed with Clarke for a further extension, for a period of two years, within which Clarke might redeem the farm, " upon paying the principal sum, and all rents due," &c.; and by the same agreement the rent was further reduced to $300 per annum. It was while this arrangement subsisted between Thomas H. Gaither and Clarke, that the mortgage by the latter to his wife was made for $2000, the larger portion of which is alleged to be still due and owing.

The plaintiff alleges that the deed and lease, with the rent reserved, were originally intended, and are still kept on foot, as a mere cover and device to evade the law of the State against usury; that the original transaction between George R. Gaither and Clarke was a loan of money at a grossly usurious rate of interest, the rate being twelve per cent. per annum, on $5000, the amount loaned, less the first year's interest deducted. It is charged that the deed and lease were not in fact intended to have operation according to their legal import, but were intended simply as a means of security for the money loaned, instead of a regular mortgage; and that there was no real *bona fide* intention of effecting a sale and purchase of the farm, as between the parties. It is charged that all, or nearly all, of the money loaned by Gaither to Clarke has been paid, with the accrued interest thereon, if all the payments made on account thereof be legally and properly applied. The plaintiff insists that the deed, and the rent reserved under the lease, cannot, in view of the facts of the case, be construed as having any greater effect and operation than a mortgage for the money loaned would have; and that, as her mortgage binds the equity of redemption, the effect of the deed and lease on record

is to impair her security, and that they constitute a fraud on her rights as mortgagee. She therefore insists that she is entitled to have the true nature of those instruments declared, and if there be any amount still due on account of the loan, that it shall be ascertained under the direction of the Court. She prays for a sale of the mortgaged premises, and that the proceeds of sale be applied to the payment of incumbrances according to their legal priorities.

To this bill Gaither demurred, for various causes stated, but the demurrer was overruled, and he then answered. Clarke, the other defendant, also answered, admitting substantially the facts as stated in the bill. Gaither, in his answer, states that he knows nothing in regard to the justness of the plaintiff's claim, but he requires strict proof of the same. He also says that he has no personal knowledge in regard to the circumstances under which the deed and lease were made; and he therefore neither admits nor denies the nature of the transaction as charged, but he requires strict proof in regard thereto. He further states, that he received under his father's will, the reversion and ground rent, secured by the deed and lease referred to, and that he still holds the same. And he insists that the plaintiff shall be required to show in what manner, and to what extent, she is interested in having the deed and lease declared to have the effect of a mortgage; and he denies all imputations of fraud, oppression, &c.

Proof was taken, and, by agreement, a decree *pro forma* was entered, from which this appeal is taken by Thomas H. Gaither, one of the defendants.

1. It is contended for the appellant that Mrs. Clarke has not alleged and shown such state of facts as will entitle her to a standing in Court as against the appellant; that it is neither alleged in her bill nor shown in proof, that she is or will be affected by the strict legal operation

of the deed and lease, or that the leasehold estate would not be sufficient to satisfy her mortgage. And further, upon the assumption that the deed and lease should be allowed the operation only of a mortgage security, she has failed to offer to redeem or make tender of the amount due the appellant, without which her bill ought not to be sustained. But these contentions, though very ingeniously pressed, we think are wholly untenable, under the circumstances of this case.

The mortgage to Mrs. Clarke does not profess to be of a leasehold estate merely ; and if it were restricted and made to operate upon a mere leasehold interest of the mortgagor in the land, it would, according to the settled law of this State, become subject to the covenants and conditions of the lease, and would be liable to be entirely defeated, by the exercise of the reserved power of re-entry for the non-payment of rent or taxes. Such state of things would certainly render her mortgage security very precarious, to say the least of it. But the plaintiff charges and insists that the deed and lease constitute nothing more than a security for money loaned, and in that light she is entitled to treat them simply as a prior incumbrance to her own mortgage; and as it is necessary to foreclose by sale of the mortgaged premises, justice to herself, and to other lien holders, requires that the true nature and effect of the deed and lease should be ascertained and declared, and whatever may be due to the appellant shall be paid out of the proceeds of sale. And this, if the plaintiff be correct in her contention as to the objects and purposes of the deed and lease, would seem to be entirely consistent with principle, and promotive of substantial justice.

As a general principle of Equity procedure, it is very true, that if the plaintiff can plainly and with certainty get at his rights and have them determined without trying and deciding a case as between co-defendants, the

Court will not enter into such case. But it will enter into and decide such case, as between co-defendants, whenever it is necessary for the fair determination of the plaintiff's case, and the co-defendants will be bound by such determination. *Cottingham vs. Shrewsbury*, 3 *Hare*, 627. This being a proceeding by a mortgagee to have the mortgaged premises sold, in order to determine what may be sold, and what may be applied to the discharge of the plaintiff's mortgage, it becomes necessary to determine the question of the validity and the true nature and effect of the deed and lease, which stand ahead of the plaintiff's mortgage; and that question must be determined not only as between the plaintiff and the defendant Gaither, but as between the co-defendants Gaither and Clarke, and they will be bound by the determination. It was said by the Court of Appeals, in the case of *Thomas vs. Mason*, 8 *Gill*, 11, that "It is the constant practice to permit a subsequent mortgagee to question the title and claim of a prior incumbrancer, and to take advantage of the legal defect or taint of the elder incumbrance. It is the right of every party in equity to question the title or the legality of a claim that precedes his own, and, by a successful impeachment, to render it void, and defeat it."

Nor do we think that it was at all necessary that the plaintiff should have offered to redeem, by making tender of the amount supposed to be due to the defendant Gaither, in respect of what is alleged to be the informal mortgage held by him, in the shape of the deed and rent reserved by the lease. Under the circumstances of the case, such tender would have been impracticable, as the amount really due, if any, was wholly unknown to the plaintiff. A willingness to allow all that is actually and fairly due, is the equitable requirement in a case like the present, and this the plaintiff has expressly reserved to the appellant in her bill. Nothing more could be

required, in order to do justice in the case.  *Thomas vs. Mason,* 8 *Gill,* 1, 12 ; *Doub vs. Barnes,* 1 *Md. Ch. Dec.,* 128, 141.

2. We come now to the consideration of the question, whether the original transaction between George R. Gaither and Clarke, was really a loan of money, and the deed and lease adopted as a device to evade the law against usury, or whether it was a *bona fide* sale and purchase of the farm, and a simultaneous lease thereof to the vendor ? And in regard to this question, in view of the facts disclosed, there would seem to be but one conclusion to which any rational mind could come, and that is, that the transaction was simply a loan of money, at a usurious rate of interest, taken in the form of a rent.

It is not shown or pretended that the elder Mr. Gaither had ever seen the farm in question, before the money was paid over to Clarke, or that he had ever contemplated the purchase of it.    There is no evidence whatever of any negotiation for the purchase of the farm ; but all the preliminaries to the making of the deed and lease were such as evidenced the purpose of making a loan of money and of obtaining ample security therefor.    The negotiation for the loan was conducted by and through the late C. C. Magruder, Esq., of Upper Marlboro', and John Glenn & Co., real estate brokers, of the City of Baltimore.    Mr. Magruder has since died; but Mr. John Glenn is still living, and has been examined as a witness in the case, and the evidence furnished by him is most material.    Mr. Glenn states in his testimony that he remembers negotiating with Mr. C. C. Magruder, attorney for Joshua T. Clarke, for a loan on certain property belonging to Clarke, or his wife, or both, *and of consummating that loan.*    The deed and lease being read to Mr. Glenn, he was asked why that form of security was resorted to, instead of a mortgage to secure the money loaned by Gaither to Clarke ; and his reply was, " because the rate of interest was over six per cent."

Mr. Glenn was then requested to produce any letters he might have, relating to the subject; and he produced his letter-press book, containing two letter-press copies of letters addressed to Mr. Magruder, the one bearing date the 30th of Oct., 1869, and the other the 22nd of Nov., 1869, and from which letter-press book transcripts were made by the examiner. And the witness seems to have no doubt that the originals of these letters were duly mailed to Mr. Magruder. Objection, however, was taken to these copies; and afterwards the originals were produced, taken from among the papers of Mr. Magruder to whom they were directed. These original letters, proven to have been found among the papers of Mr. Magruder, deceased, bear upon their envelopes the post-marks or stamps, and postage stamps, showing the dates of their passage through the post-office ; and they, in every particular, correspond with the letter-press copies. Thus proven and identified, we think these letters were properly admissible in evidence. 1 *Greenl. Ev.*, secs. 116, 120. See, also, *sec.* 40. They are admissible in evidence as part of the *res gestæ*.

By the first of these letters, Mr. Glenn informs Mr. Magruder, that Mr. Gaither will take Clarke's property of 500 acres, as security for a note of $6,000, payable two years after date, without interest, to be discounted by Mr. Gaither at 12 per cent. *per annum ;* provided Mr. Magruder considered the property worth easily from $18,000 to $20,000, and provided he could recommend the man. This proposition seems to have been based upon the supposition that the farm contained 500 acres, and was worth at least $18,000. But, as we may infer, upon being informed that it contained but 400 acres, and was worth less than $18,000, the amount of the proposed loan was reduced to $5000, at 12 per cent. per *annum;* as that was the loan actually consummated by Mr. Glenn.

The second letter was written after the deed and lease had been executed, and it refers to some apprehension

expressed by Mr. Gaither that his *lien* on the farm was not the first; and Mr. Magruder is requested to be explicit upon the subject, and to have the deed recorded, and forward it at once. The first year's interest of 12 per cent. was deducted from the $5000, and Clarke received of the loan only $4400.

There is, certainly, nothing in all this to indicate a purpose on the part of Mr. Gaither really to purchase the farm ; and it is difficult to believe that Clarke would have been willing to sell his valuable farm, of 400 acres, for $5000, and take a lease thereof at an annual rent of 12 per cent. of the purchase money. And that an actual *bona fide* sale and purchase of the farm was not what was really and truly intended by the parties, is strongly indicated by the letter of the appellant, of Feb. 20th, 1880, addressed to Clarke upon the subject of his indebtedness. In that letter, the appellant says to Clarke, " I did not mean to change our agreement ; I only wanted you to see how the account stood between us. I will not trouble you, if you so chose, until Feb., 1881. I think you said you would try, during this year of extension, to pay something *on account of the interest,* as it matured. I would advise, if you can raise any money, that you pay what you can to keep the *interest* down. You know the larger claim I have the less chance you will have to get your wife's claim." It was not rent, but interest, that Clarke was advised to keep down, and the whole tenor of the letter shows that it was to an interest bearing claim that reference was made.

Upon the whole, we are entirely of opinion that the original transaction was a loan of money at forbidden rates of interest, and that the deed and lease were adopted as means to evade the law. They were intended as security for the loan, and nothing more. And such being the case, it is wholly immaterial that the transaction was made to assume the form of a sale and lease of the farm. For

the general principle is, if the transaction be really a borrowing and lending of money, at unlawful rates of interest, as it doubtless was in this case, that no ingenuity can give to it a form that will shield it against impeachment and judicial investigation. This case falls directly within the principle of the case of *Montague vs. Sewell,* 57 *Md.,* 407, and must be·disposed of accordingly. Upon account stated, whatever may be found to be due the appellant on account of the loan of $4400, with interest at six per cent. per annum, will be allowed priority over the mortgage claim of the plaintiff, Mrs. Clarke.

The decree passed by the Court below is correct, and is therefore affirmed.

> *Decree affirmed, and*
> *cause remanded.*