## CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed April 6, 1893.

HENRIETTA McRAE

VS.

GEORGE P. McRAE AND MARGARET J. McRAE, HIS WIFE.

*Frank Gosnell* and *Thomas M. Lanahan* for plaintiff.

*Theophilus B. Horwitz* for defendants.

WICKES, J.—

The original bill filed in this case prayed the enforcement of a contract entered into between the late Charles McRae, the husband of the plaintiff, and George P. McRae, his brother, one of the defendants. The bill recites that on the 20th day of April, 1888. George McRae leased to Charles, for a period of five years, a house and lot of ground in this city upon certain conditions and terms set forth in the lease, which said lease also contained the following covenant, to wit: That the said George would at any time during the lease "upon payment or tendering payment by the said Charles McRae,, his heirs or personal representatives, to the said George P. McRae, his heirs, personal representatives or assigns, of the sum of $10,000, and all rents, &c."; "that the said George, his heirs, personal representatives or assigns, will execute and deliver to the said Charles McRae, his heir or personal representatives, a good and sufficient deed, in fee, of the lot of ground and premises hereinbefore described, &c."

It is admitted in the answer that the lease was executed, and that Charles complied with all the terms on his part, and that a sum of money was tendered and a bill demanded, but that the defendant, George, is unable to convey, because his wife refuses to join in the deed.

The question is therefore presented, and strangely enough it seems to be of first impression in this State, what power, if any, a Court of Equity has to decree specific performance of such a contract, so far as the husband's interest is involved, with pecuniary compensation for the dower interest of the wife.

We find a conflict of decisions elsewhere.

In Pennsylvania and New Jersey the current of authority is adverse to the power of a Court of Equity to give relief in such cases, but Pomroy in his treatise on Specific Performance, severely criticises the reasoning of the Pennsylvania cases, and strongly inclines to the doctrine of the New York and Massachusett's decisions. In 14 Allen (Davis vs. Parker) 94, the defendant agreed to convey by a good and sufficient deed, &c. The defense was, *inter alia,* that the wife refused to release. Hoan, J., delivering the opinion of the Court said. "If defendant tendered the best deed in his power to make, it was not such a deed as his contract bound him to execute, nor such as the plaintiff was required to accept. If he was unable to procure a release of dower, he should have accompanied his tender of a deed, with an offer to deduct the value of the incumbrance from the purchase money. At the election of the plaintiff, there may be a decree for specific performance so far as it is in the defendant's power *pro tanto.* and a proportionate reduction made from the purchase money for the part which cannot be specifically performed."

In Bostwick vs. Beach, 103 N. Y. R. 414 (decided in 1886), the defense was the refusal of the widow to join in the deed made by the executors under a power of sale contained in the will. The Court held (Rapallo, J.) :

"If the purchaser should elect to carry out his purchase and take title to the laws subject to that dower right, he would clearly be entitled to do so, and in that event would be entitled

354

to an abatement from the contract price, equal to the gross cash value of the right of dower. If a seller of land is not able to comply fully with the contract, either in respect of the quantity of land or the extent of the estate, the Court will, at the election of the buyer, decree specific performance of the contract, so far as the same can be performed, awarding compensation to the purchaser by way of abatement from the purchase money, for any deficiency in title, quantity of land, or other matters touching the estate, the value of which are capable of being ascertained and thus compensated without doing injustice to either party," and then cites with approval the Massachusetts case of Davis vs. Parker, above referred to. Continuing, the Court say, "The gross value of the dower right has been adjudged in such cases to be the measure of compensation to be allowed to the purchaser by way of abatement from the price." See also 2 Beach. Mod. Eq. 628, and note. Indeed, it is difficult to understand why Courts of Equity should not deal with questions of this character, unless upon the theory of one of the cases that the true remedy was to commit for attempt, the husband who fails to obey the decree of the Court, which would of course give color to the doctrine of the Pennsylvania cases, that a decree of specific performance under such circumstances would *coerce* the wife into parting with her interest.

A clearer case for the application of the principle adopted in Davis vs. Parker and Bostwich vs. Beach can scarcely be conceived than the one in hand. It is manifest from the evidence that the defendant, George P. McRae, has made no effort at all to induce his wife to release her dower; on the contrary, her testimony shows that he never talked to her about signing a deed, and his bookkeeper, Myer, has testified that at the time the money was tendered for the property, the reason the defendant assigned for not selling was that the property "was worth more to him than was offered."

I would not hesitate to enter a decree on this branch of the case but for the amended bill and answer, which introduce another and different issue into the case.

At the taking of the testimony under the original bill, the plaintiff became apprised of facts which induced her to believe that the agreement or understanding between Charles and George McRae at the time the property in question was sold by the trustees appointed by the Circuit Court for that purpose, constituted the transaction substantially a loan from George to Charles, for which the deed from the trustees to George, although conveying upon its face a fee-simple estate, was in reality but a security for the payment of the purchase money $10,000, at any time during the five years covered by the lease. An amended bill was therefore filed setting forth the newly discovered facts, as she understood them, and praying for other and appropriate relief. The answer denied the agreement as set forth in the bill, and relied largely, as has the learned counsel in argument, upon the character of the deed from the trustees, as establishing the bona fide purchase by George of the estate sold by the trustees. But the question is not, of course, to be determined by the face of the deed, or even by what the trustees supposed, but by the agreement between the parties themselves.

At the time the agreement in question was entered into, the only persons present were Mr. Merryman, the counsel of both the parties at the time, Mr. Littig, one of the trustees, and George and Charles McRae. Charles having since died, George is incompetent to testify. Biggs vs. McCurley, Atlantic Reporter, Jan. 11. 1893, 466. We are reduced, therefore, to the testimony of Mr. Merryman and Mr. Littig as to what was the real understanding between the parties to the lease at the time the property was sold.

Mr. Merryman has testified that he was counsel for the trustees at the time the sale was made. That the property was knocked down to Charles, and reported in the name of George, because of an agreement between them, made at the time of the sale, and in the presence of himself and Mr. Littig. The agreement, he states, was that Charles should have the property whenever he paid the $10,000 to his brother, George. He further says that George was substituted for Charles in the purchase because of Charles'

unwillingness or inability to take the money out of his business, while George had available money then loaned out. He also testifies that the form of conveyance was discussed by both parties with him, and it was determined that it should be put in the form expressed in the lease, because *Charles did not desire to make a mortgage, because he believed and stated that it might injure or affect his credit.* That he, Merryman, prepared both the lease and the deed from the trustees, and the lease was executed some days in advance of the deed, because of the unwillingness of Charles to allow a deed made to George until the terms of agreement made on the day of sale were put in such form as would protect him. He further testified that as between the parties, the deed from the trustees to George, was understood to be *merely a security for the payment of the* $10,000.

"Speaking for myself," the witness says, "I so understood it, and I believe is was so understood by all the parties, Mr. Littig, the trustee, Mr. George P. McRae and Mr. Charles McRae."

Mr. Littig testifies that he was present as one of the trustees on the day of sale, and that the property was knocked down to Charles. That he was also present at a conversation between George and Charles, that George McRae had money out at a low rate of interest, and that he was to be substituted for Charles, with verbal understanding that Charles could buy the property back—*it was a loan, as I understood it, by George.* The lease and agreement was made afterward, covering that verbal understanding. That understanding was that the property was to be reported to George and that he was to have the money at a stipulated time, and upon that payment back, Charles was to have the property.

Mr. Taylor, the auctioneer, has testified that the property was knocked down to Charles, and that Merryman, Littig and the two McRaes all came up and told him to put it in the name of George.

In addition to this parol evidence to show the real nature and intention of the parties to the transaction, the lease itself recites, that the property was sold "unto Charles McRae at and for the sum of $10,000," he being the highest bidder therefor." There is evidence in the case to show the declaration of Charles and George afterwards that George was the purchaser, and of witnesses who were present at the sale that the property was knocked down to George. But the immediate transaction between the parties, according to which the question involved in this branch of the case must be decided, must of necessity depend upon the testimony of the witnesses, Merryman and Littig, who alone are competent to say what the real understanding was between the parties to the lease. It is of course to be regretted that the lease does not more clearly express the agreement, in persuance of which it seems to have been made, for standing alone, its fair construction is, that George is the real purchaser, and that Charles is but a tenant with an option to buy within a specified time upon certain terms.

But the testimony, which for the purpose of this inquiry is undisputed, shows that the $10,000 paid by George for the property in question, was "a loan from George" as Mr. Littig says, and the deed was according to Mr. Merryman "merely security for the payment of the money."

In Montague vs. Sewell, 57 Md. 414, it is said: "Courts therefore have recognized the necessity of disregarding the form, and examining into the real nature of the transaction; and if that be in fact a *loan, no shift or device will protect it.* And as in such cases the original intention of the parties can seldom be arrived at except by resort to matters *de hors* the particular instruments of writing executed by them, extrinsic evidence must be received to show the real nature and intention of the transaction." Tyson vs. Rickard, 3 H. & J. 109, 114; Andreas vs. Poe, 30 Md. 486; Gaither vs. Clark, 67 Md. 18 and Neal vs. Rathall, 70 Md. 592. If, then, the transaction stands upon the footing of a loan and security for the loan, the case would seem to be ruled by Dryden vs. Hanway, 31 Md. 254. There, as here, a relative advanced the purchase money and was reported to the Orphans' Court as the purchaser, but the Court say on page 263, "if Hanway did not in truth become the purchaser of the property,

and did not mean to buy the same, but merely to advance or loan the money to Dryden, the purchase in equity can only be considered as made by Dryden, and the deed, although taken in Hanway's name, constitutes him but a trustee for Dryden, the *bona fide* purchaser, and is only a security for the payment of the loan." In such a case the Court further say, "a resulting trust is fully established, which a Court of Equity will recognize; upon the payment of the amount loaned by Hanway to Dryden with the arrears of interest thereon, within such reasonable time as may be prescribed by the Court below, the property must be discharged from the lien of the same, and be conveyed to the appellant Dryden by a trustee to be appointed by the Court for that purpose."

If these conclusions of law and fact are correct, it becomes important to note the effect upon the inchoate right of dower claimed by Mrs. Margaret McRae, the wife of George P. McRae, and a party defendant in the amended bill.

By the Code, Vol. 1, Art. 45, Sec. 5, "A widow shall be entitled to dower in lands held by an equitable title in the husband—but such right of dower shall not operate to the prejudice of any claim for the purchase money of such lands, or other lien on the same."

Again said the Court of Appeals, in Glenn vs. Clark, 53 Md. 604; it is "well settled that the wife's right to dower in the equitable estate of her husband exists only where husband is possessed of such estate *at the time of his death.*" Bowin vs. Berry, 1 Md., Ch. 454. If then the $10,000 paid by George at the trustees' sale is to be regarded as a loan, and the deed construed to be a mortgage as is contended—or if the effect of the agreement is as in Hanway vs. Dryden, that the purchase in equity is to be considered as made by Charles and the deed, although taken in the name of George, constitutes him but a trustee for Charles, and in addition the contract having been entered into before the execution of the deed to George would seem to constitute a lien upon the land within the letter and meaning of the Code and the decisions referred to, and stand unaffected by any right of dower in the wife.

Some testimony was taken to show that a proper tender had not been made of the money for the property, and especially that no deed was offered the defendant for execution. This part of the case was however practically abandoned at the argument, on the authority of the cases which decide that "to entitle a purchaser to demand a deed, it is sufficient that he is ready and offers to comply with the contract on his part, and has the ability to perform it. Oliver vs. Palmer, 11 G. & J. 426, Maughlin vs. Perry & Warner, 35 Md. 358.

The only remaining question relates to the usurious interest which it is alleged has been paid the defendant under the contract and lease between the parties. If the transaction was a loan and security for the loan, as the witnesses have stated, then it follows that any excess of interest over the legal rate must be accounted for.

The sum paid annually under the lease was intended to cover the various charges specified in it, which the defendant, George, agreed to pay. So that it was denied at the argument that any excess above the legal rate had been collected, even if it was a loan, which was denied. This can only be ascertained by reference to an auditor, with instructions to state an account.

*—A decree will be signed accordingly.*