### In re SACHS.

### JOSEPH v. WINAKUR.

Circuit Court of Appeals, Fourth Circuit.
January 16, 1929.

No. 2739.

See, also, 31 F.(2d) ——.

Abram C. Joseph and J. Wallace Bryan, both of Baltimore, Md. (Daniel C. Joseph, of Baltimore, Md., on the brief), for appellant.

Louis Mitnick and Randolph Barton, Jr., both of Baltimore, Md., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and BAKER, District Judge.

PARKER, Circuit Judge. This is an appeal from an order entered in a proceeding instituted by the trustee in bankruptcy of Louis Sachs against one Eleazer Winakur for the purpose of recovering from him certain secondhand automobiles or their value. During the progress of the litigation the automobiles were sold under order of court, pursuant to an agreement that the rights of the parties should be transferred to their proceeds. There were two distinct classes of the automobiles, those covered by chattel mortgages and placed in the possession of Winakur at the time of the execution of the mortgages, and those covered by bills of sale and so-called "consignment" contracts and left in possession of the bankrupt until the day before the filing of the petition in bankruptcy, when they were seized under legal process and taken into possession by Winakur. The automobiles covered by the mortgages proper sold for $3,122.37, and those embraced in the bills of sale and consignment contracts for $6,604.60. The District Judge held that Winakur was entitled to the proceeds of both classes, and from this holding the trustee in bankruptcy has appealed.

With respect to the automobiles covered by the chattel mortgages proper, it not only appears that the mortgages were properly recorded, but also, as stated above, that the automobiles themselves were placed in possession of Winakur at the time of the execution of the mortgages and remained there until after the bankruptcy. There can be no question, therefore, that as to the proceeds of these the ruling of the learned District Judge was correct; and

counsel for the trustee so admitted on the argument before us. These, then, need not be further considered.

With respect to the proceeds of the automobiles covered by the bills of sale and consignment contracts, however, very different questions arise. It is contended on behalf of the trustee in bankruptcy that the bills of sale were given merely as security for loans made by Winakur; that, although they were duly recorded as bills of sale, the recording amounted to nothing under the laws of Maryland, because the so-called consignment contracts, which were a part of the same transactions, were not also recorded, and that this left Winakur in the position of a mortgagee with an unrecorded mortgage void as against creditors; and that Winakur's position was not helped by the seizure on the day preceding the filing of the petition in bankruptcy, since under the law of Maryland unrecorded chattel mortgages are void as against the rights of all subsequent creditors, and not merely as against the rights of those who have perfected liens. On Winakur's behalf it is contended that his relationship to Sachs with respect to the automobiles covered by the bills of sale was that of bailor and bailee, and it is denied that the statutes of Maryland relied on by the trustee have any application. The contention is made also that, however these questions may be decided, the seizure of the automobiles prior to the filing of the petition in bankruptcy perfected the lien of Winakur before the lien of the trustee attached and defeated any rights which the trustee otherwise might have acquired. Three questions, therefore, are presented for our determination: (1) What was the relationship between Sachs and Winakur with respect to these automobiles? (2) What was the effect under the law of Maryland of the failure to record the consignment agreements along with the bills of sale? And (3) what was the effect of the seizure of the automobiles by Winakur on the eve of bankruptcy?

On the first question, we think that there can be no doubt that the relationship between Sachs and Winakur was that of debtor and creditor, and that the bills of sale were executed by Sachs, not for the purpose of transferring absolute property in the automobiles which they covered, but as security in the nature of a mortgage for money loaned. In the agreed statement of facts it is stipulated that bankrupt began borrowing from Winakur two years prior to the bankruptcy, and

continued to borrow until the bankruptcy occurred; that on the first few transactions Winakur charged 3½ per cent. per month interest, but later reduced this charge to 2½ per cent. per month; that in most instances Winakur took from bankrupt a bill of sale covering an automobile and contemporaneously executed a consignment agreement; that the consideration for the automobile in the bill of sale and the "cost value" in the corresponding consignment agreement was the same "and represented the amount of the loan in each case from Winakur to Sachs"; that Winakur holds on each of the automobiles involved in this proceeding either a chattel mortgage *or bill of sale and consignment agreement,* "in each case securing a loan actually made at the time"; and that, although the rate of interest provided to be paid "on the transactions involved in this proceeding" was 2½ per cent. per month, Winakur now asserts his claim "for interest at the rate of 6 per cent. per annum from the date of the making of the loan in each case."

The bills of sale were in the usual form, and in them bankrupt, for the consideration recited, did "bargain, sell, assign and transfer" to Winakur the automobiles described. The bills of sale were duly recorded; but the consignment agreements, which were executed contemporaneously with them, and which contained the terms upon which the loans were made, were not recorded. These were signed by Winakur and Sachs, the bankrupt. They set forth that Winakur had left in the possession of Sachs at the latter's premises the automobile covered by the bill of sale at a certain "cost value for purposes of this memorandum" (which cost value, it is admitted, was the same as the consideration set forth in the corresponding bill of sale). They contained an agreement that Sachs should be permitted to hold the automobiles and to sell them in the usual course of business, and within 90 days either redeliver them to Winakur or out of the proceeds of sale pay him the "cost value" as shown, with 3½ per cent. per month from date, and that settlement should be made immediately upon sale. They contained provisions, also, that Winakur was to receive the money "absolutely net to him"; that all costs and expenses were to be borne by Sachs; that the automobiles were to be at the risk of Sachs and were to be insured by him; that Winakur was not to be considered a partner, but the relationship was to be that of consignor and consignee; and that Winakur should have the right at any time without notice to take possession of the automobiles and terminate the consignment. At the time of securing the loan in each case, in addition to executing the bill of sale and consignment agreement, Sachs indorsed in blank and delivered to Winakur the automobile title certificate, which Winakur "retained in his possession until the car was sold and the proceeds of the loan repaid."

Upon these facts, which are admitted by stipulation of counsel, it is too clear to admit of argument that what we are dealing with is not a consignment, but a chattel mortgage. Winakur was not in the automobile business, but in the business of lending money. It was evidently not intended that he should have the general property in the automobiles, but merely the legal title as security for the money which he was lending. The bankrupt was to have the right to sell the automobiles at any price that he pleased, and his only obligation was to account to Winakur for the amount of the loan, plus the interest of 3½ or 2½ per cent. per month.

Equity looks through the external forms in which parties may have clothed their transactions and has regard for the substance of their agreements. In this case, however, the form as well as the substance shows that the transactions were mortgages to secure debts and not consignments; for, when the so-called consignment agreement is read in connection with the bill of sale, what we have is a mortgage with a power of sale on the part of the mortgagor, and with the right on the part of the mortgagee to take possession, if sale is not made within a certain time. Manifestly calling such a transaction a consignment does not make it a consignment; for, where personal property is transferred or assigned as security for a debt, the transaction will be regarded as a mortgage of the property, whatever the parties may have called it. 11 C. J. 398–401; 5 R. C. L. 384, 388; Morgan's Assignees v. Shinn, 15 Wall. 105, 21 L. Ed. 87; Title Guaranty & Surety Co. v. Witmire (C. C. A. 6th) 195 F. 41, 44; In re Southern Textile Co. (C. C. A. 2d) 174 F. 523, 526; Kerr v. Gilmore, 6 Watts (Pa.) 405; Smith v. Pfluger, 126 Wis. 253, 105 N. W. 476, 2 L. R. A. (N. S.) 783, 110 Am. St. Rep. 911; Wilcox v. Cherry, 123 N. C. 79, 31 S. E. 369; Dougherty v. McColgan, 6 Gill & J. (Md.) 275, 281, 282; Waters v. Riggin, 19 Md. 536; Gaither v. Clark, 67 Md. 18, 31, 8 A. 740; Funk v. Harshman, 110 Md. 127, 72 A. 665.

As said by the Pennsylvania court in Kerr v. Gilmore, supra: "The result of these cases seems to be, that, if the agreement is in substance a loan of money, no management or contrivance of the lender; no form of expression in the instruments; not even dating the defeasance several days after the deed; not even the lender uniformly stating that he will not have a mortgage, will avail. A sale in form, but which in fact and substance may be avoided by the payment of money within a given time, is and will be held to be a mortgage."

The rule is well stated in 5 R. C. L. 388, 389, as follows: "A bill of sale absolute on its face will be deemed a mortgage if intended as such by the parties, that is, if it is given merely as security for a debt. * * * Sometimes a bill of sale intended as security for money lent is accompanied by the execution of a separate instrument of defeasance, by the terms of which, on repayment of the loan at a certain time, the bill of sale is to be surrendered to the vendor. In such a case the two instruments must be construed together and constitute a mortgage." And see Taber v. Hamlin, 97 Mass. 489, 93 Am. Dec. 113; Weathersly v. Weathersly, 40 Miss. 462, 90 Am. Dec. 345; Stephens v. Sherrod, 6 Tex. 294, 55 Am. Dec. 776.

"As to what constitutes a mortgage," says Mr. Justice Story (2 Story's Eq. § 1018), "there is no difficulty whatever in courts of equity, although there may be technical embarrassment in courts of law. The particular form or words of the conveyance are unimportant; and it may be laid down as a general rule, subject to few exceptions, that wherever a conveyance, assignment, or other instrument, transferring an estate, is originally intended, between the parties, as a security for money, or for any other incumbrance, whether this intention appear from the same instrument or from any other, it is always considered in equity as a mortgage."

Having determined, therefore, that the bills of sale were given by Sachs merely as security for the loans made by Winakur, and that taken in connection with the so-called consignment agreements they are to be viewed as chattel mortgages, the next question is whether these instruments are valid under the laws of Maryland against creditors of Sachs, in view of the fact that the consignment agreements were not recorded. Section 1 of article 66 of the Code of Maryland provides:

"1. Every deed conveying real estate or chattels, which by any other instrument or writing shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage, and the person for whose benefit such deed shall be made shall not have any benefit or advantage from the recording thereof, unless every instrument and writing operating as a defeasance of the same, or explanatory of its being designed to have the effect only of a mortgage or conditional deed, be also therewith recorded."

As we have seen, the bills of sale relied on by Winakur were intended, to use the words of the statute, as "security in the nature of a mortgage"; and we think it equally clear that the consignment agreement contemporaneously executed with each bill of sale is to be considered as "operating as a defeasance" of the conveyance expressed in the bill of sale, or as explanatory of its "being designed to have the effect only of a mortgage." Each bill of sale upon its face purported to convey the entire property in the mortgaged automobile to Winakur. So far as it was concerned, there was nothing to indicate that any right or interest in the automobile remained in Sachs. The "consignment" agreement, however, which was executed at the same time and as a part of the same transaction, provided the terms upon which the rights of Winakur under the bill of sale might be defeated, viz., by the repayment of the loan within 90 days with interest at the rate of 2½ per cent. per month. It further provided that for 90 days Sachs might retain possession of the automobile and might sell it upon paying to Winakur from the proceeds the amount of the loan and interest. If the two papers had been recorded together, they would have shown the true nature of the loan and mortgage, and the rights of Sachs in the mortgaged property, and no one examining the records and reading the instruments would have been misled as to the fact that a large part of Sachs' stock in trade was mortgaged to Winakur. The recording of the bills of sale alone, however, would not give this notice; for a searcher of the records would not look among the absolute conveyances to find a mortgage on the stock on hand.

In Dougherty v. McColgan, supra, 6 Gill & J. (Md.) 275, the Court of Appeals of Maryland had under consideration an absolute deed and a bond contemporaneously

executed agreeing to reconvey title upon repayment within a year of the consideration of the deed. The court said:

"A covenant to pay the debt, or to repay the money lent, is not (though proper to be introduced) an indispensable ingredient to a mortgage. If a security for the money is intended, that security is a mortgage, though not bearing upon its face the form of a mortgage, which chancery does not respect, but looking through the whole transaction as far as it can (with the defeasance, if there be one), to ascertain the true character of the contract; if it be found to be different in reality from the appearance it assumes, will remove the veil with which it is covered. * * * We find that on the 7th of November, of the same year, an absolute deed for the same property was given by the appellant to the defendant, accompanied by a defeasance, or bond of conveyance, on the payment by the appellant, at the expiration of twelve months from the date of the same sum of money, for which the original mortgage was given as a collateral security. * * * "

In Waters v. Riggin, 19 Md. 536, and Harrison v. Morton, 87 Md. 671, 40 A. 897, the court dealt also with bonds for title executed contemporaneously with deeds, and held that, except as between the parties, no advantage was derived from recording the deed without the accompanying instrument. In Waters v. Riggin the court said: "In view, therefore, of the evidence offered by the appellee, both written and oral, and to which we have heretofore referred, the deed from Riggin to Horsey must be regarded as a mortgage, and there being no evidence that the bond, operating as a defeasance, was recorded with the deed, Horsey could have no benefit or advantage from the recording thereof, and the deed was improperly admitted to go to the jury as evidence of title in Horsey."

And in Harrison v. Morton it was said: "Inasmuch as the deed, which was an absolute conveyance in terms, was intended only as a security in the nature of a mortgage, according to the allegations of the bill, and as the agreement operating as a defeasance was not recorded with the deed, section 1 of article 66 of the Code deprives the plaintiff of any benefit of recording the deed, so far as third persons are concerned. * * * "

■ We are bound, of course, by the construction which the Maryland courts have placed upon the statutes of that state; but it is worth noting that virtually the same

holding has been made in other jurisdictions. See Counsell v. London Loan Co., 19 Q. B. D. 512; Curtin v. Isaacsen, 36 W. Va. 391, 15 S. E. 171. Indeed, under the doctrine of the case last cited, it may well be doubted whether, in the absence of the statute which we have quoted, the recording of the bills of sale would have any validity, in view of the fact that the transactions were in reality mortgages and the registration of mortgages is expressly required by statute. Code, art. 21, § 51.

■ Winakur's status under the statute of Maryland, therefore, with respect to the automobiles covered by the bills of sale and consignment contracts is that of the holder of unrecorded chattel mortgages. There can be no question as to the status of these under the Maryland statute. Section 51 of article 21 of the Code, cited above, provides that "mortgages of personal property shall be valid and take effect, except as between parties thereto, only from the time of recording." And it is held that this statute is for the protection of purchasers, lienors, and subsequent creditors without notice. Textor v. Orr, 86 Md. 392, 38 A. 939; Roberts v. Robinson, 141 Md. 37, 118 A. 198; Meyer Motor Co. v. First Nat. Bk. (Md.) 140 A. 34; Millikin v. Second Nat. Bk. (C. C. A. 4th) 206 F. 14; Mitchell v. Nelson (C. C. A. 4th) 16 F.(2d) 767; In re Rosen (D. C.) 23 F.(2d) 687; In re Shipley (D. C.) 24 F.(2d) 991.

As said by the Court of Appeals of Maryland in the very recent case of Meyer Motor Co. v. First Nat. Bk., supra: "Defectively executed or unrecorded chattel mortgages have been held to be preferred in this state as to prior existing creditors, equal to general subsequent creditors, but subject to later lien creditors whose liens were duly executed and recorded or secured." If, therefore, the automobiles had been in possession of the bankrupt at the time of the filing of the petition, there can be no question that the trustee, being vested with the rights of a creditor holding a lien by legal or equitable proceedings, would have rights in them superior to the rights of the mortgagee under an unrecorded chattel mortgage. Bankruptcy Act, § 47a (2); 11 USCA § 75 (a) (2); Fairbanks Steam Shovel Co. v. Wills, 240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841.

■ The automobiles in question, however, were not in possession of the bankrupt at the time of the filing of the petition and did not come into the custody of the court, but were seized and taken into possession by the

mortgagee on the eve of bankruptcy. As to them the trustee was by the Bankruptcy Act "vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." Bankruptcy Act, § 47a (2). And it is elementary that the rights of such judgment creditor are to be determined by the laws of Maryland. The question, then, is whether under the laws of that state a judgment creditor could recover the property from the mortgagee, who had so repossessed it, and subject it to the satisfaction of his claim; and the answer is that he could, if he were subsequent creditor—i. e., if the debt due him was incurred after the execution of the mortgage. Roberts v. Robinson, supra; In re Rosen, supra. As said in the case of Roberts v. Robinson:

"As the property is not in the custody of that court, the trustees' right to controvert the plaintiffs' claim is that which 'a judgment creditor holding an execution duly returned unsatisfied' would possess. * * * The right of such a creditor to defend his interests against a claim declared by law to be void is too clear for controversy. It is not necessary to determine generally in this case the rights and remedies of judgment creditors holding executions returned unsatisfied, but it is sufficient to state our conclusion that they are entitled, *in view of our statute,* to challenge a lien or title dependent upon an unrecorded agreement of which they were unaware when their claims were contracted." (Italics ours.)

The case of Finance & Guaranty Co. v. Oppenhimer, 48 S. Ct. 209, 72 L. Ed. 443, relied upon by appellee, has no application; for that case dealt with a statute of Virginia, in which the word "creditors" had been construed by the Supreme Court of Appeals of that state as meaning creditors having a lien, and the decision of the Supreme Court was expressly based upon such interpretation. Likewise in the case of Martin v. Commercial National Bank, 245 U. S. 513, 516, 38 S. Ct. 176, 177 (62 L. Ed. 441), the court dealt with a statute of Georgia which provided that unrecorded mortgages should be "postponed to all other liens created or obtained, or purchases made prior to the actual record of the mortgage." In Firestone Tire & Rubber Co. v. Cross (C. C. A. 4th) 17 F.(2d) 417, we dealt with a recording statute of South Carolina, which had been interpreted by the courts of that state as providing that, while an unrecorded mortgage was void as against subsequent creditors, nevertheless upon its be-

ing recorded within the statutory time it should be good against all creditors who had not in the meantime secured some lien upon the property.

In other words, the question is one of state law. If the creditors who may assail the unrecorded mortgage are only those who have fixed some lien upon the property, as is the case with the statutes of Virginia, Georgia, and South Carolina in the cases cited, then if the creditor holding the unrecorded mortgage has same recorded, or gets possession of the property before bankruptcy gives the trustee the status of a creditor with a lien thereon, the trustee cannot complain. But if, as is the case in Maryland, a subsequent creditor may assail the lien of the unrecorded mortgage and subject the property to the satisfaction of his claim, even though he may not have acquired a lien, the trustee in bankruptcy may do so, for the act expressly gives him the rights of such creditor. And where state statutes recognize the rights of general creditors, as distinguished from lien creditors, against unrecorded liens and mortgages, courts of bankruptcy should be slow to give them an interpretation which would make it possible for a secured creditor to give his debtor a false credit by withholding his mortgage from record, and then assert it on the eve of bankruptcy and take the apparent assets of the bankrupt into his possession to the exclusion of other creditors.

Our conclusion, therefore, is that the bills of sale and consignment contracts were in substance chattel mortgages, and, not being properly recorded, were void as against the subsequent creditors of the bankrupt; that the repossession of such property by the mortgagee did not, under the law of Maryland, defeat the rights of such creditors, but that, if bankruptcy had not intervened, they might have subjected the mortgaged property to the satisfaction of their claims, notwithstanding such seizure; and that the trustee is vested by law with the rights of such creditors, and can proceed against the property just as they could have done. We assume that there were subsequent creditors within the meaning of the statute, as considerable time elapsed between the execution of the instruments and the filing of the petition in bankruptcy; but the facts with regard to this very material matter do not appear from the record before us, as the case was decided below upon the erroneous theory that the relationship between the parties was that of consignor and consignee. We

are remanding the case, therefore, in order that the facts with regard to this matter may be ascertained. If it should appear that there were no subsequent creditors, then, of course, the chattel mortgages, even though unrecorded, would be good against the trustee, and the seizure thereunder would be valid. If, however, it should appear that there were subsequent creditors, the trustee would be vested with their right to proceed against the property or its proceeds, although his recovery would be for the benefit of creditors generally. In re Moore (C. C. A. 4th) 11 F.(2d) 62; Globe Bank v. Martin, 236 U. S. 288, 35 S. Ct. 377, 59 L. Ed. 583.

The decree of the court below is affirmed as to the proceeds of the automobiles covered by the chattel mortgages and placed in possession of the mortgagee at the time of their execution, but is reversed as to the proceeds of those covered by the bills of sale and consignment contracts and left in possession of the bankrupt. And the cause is remanded for further proceedings in accordance with the principles here announced.

Affirmed in part, reversed in part, and remanded.